**GREENBERG TRAURIG, LLP**
Galit Kierkut, Esq.
Eric W. Moran, Esq.
Martin C. Fojas, Esq.
Karen Gillen, Esq.
Samantha Varsalona, Esq.
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 360-7900
(973) 301-8410 (fax)
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HAIER US APPLIANCE SOLUTIONS, INC. D/B/A GE APPLIANCES,<br><br>Plaintiff,<br><br>v.<br><br>MIDEA AMERICA CORP.,<br><br>Defendant. | Civil Action No.:<br><br>**VERIFIED COMPLAINT** |

Plaintiff, Haier US Appliance Solutions, Inc., d/b/a GE Appliances ("GE Appliances" or the "Company"), for its Verified Complaint against Defendant, Midea America Corp. ("Midea" or "Defendant"), alleges as follows:

## INTRODUCTION

1. Through this action, GE Appliances seeks to protect and recover its business, trade secrets, and confidential and proprietary information, including new product designs, technical specifications, pre-patent, non-public proprietary

innovations, new product plans, sensitive compliance data, and pricing, supplier and sales information, all of which Midea—GE Appliances' direct competitor—is believed currently to be accessing and using after raiding at least six of GE Appliances' employees in the last three months, most recently on or about March 27, 2025.

2. GE Appliances invested significant resources in each of these now-former GE Appliances employees: James Armstrong ("Armstrong"), Brian Allgeier ("Allgeier"), Cody Ewing ("Ewing"), Adam Hofmann ("Hofmann"), Kyle Kratzsch ("Kratzsch"), and Jason Zhuo ("Zhuo") (Armstrong, Allgeier, Ewing, Hofmann, Kratzsch, and Zhuo, are collectively referred to hereinafter as "Targeted Employees").

3. Many of the Targeted Employees were hired by GE Appliances straight from college into GE Appliances' premier "Edison Engineering Development Program," a unique three-year program for college graduates providing industry experience, mentorship, and an opportunity to earn a Master's degree. GE Appliances hired the others with no experience in the industry.

4. GE Appliances took risks on each of these Targeted Employees, and invested significant training, resources, time and money into developing them—eventually promoting them to the high-level technical engineering positions they held while working at GE Appliances.

5. The Targeted Employees all worked on the GE Appliances' technology team developing new and innovative products for the Company, in a variety of product areas including cooking, refrigeration, dishwashers, and washers and dryers. The Targeted Employees were intimately involved in the development of new products and had valuable visibility into new products the Company planned to introduce, as well as its current and projected sales volumes.

6. They not only had access to GE Appliances' trade secrets and confidential and proprietary information, but developed, designed and used that information daily. Thus, it was the Targeted Employees' mandate while employed at GE Appliances to use the Company's existing trade secrets and confidential and proprietary information to create and protect new innovations to GE Appliances' competitive advantage.

7. In October 2024, Midea expanded one of its research centers by approximately 400% to "innovate and develop cutting-edge products" specifically targeted to compete with market participants like GE Appliances. Within months of that expansion, Midea commenced a raid on GE Appliances' technical experts and engineers.

8. In December 2024, Midea recruited Hofmann, the leader of GE Appliances' research and development for the dishwasher product line, and creator, developer and manager of non-public intellectual property for that product line.

9. In January 2025, Midea recruited three more GE Appliances employees—Ewing, who developed new and innovative product plans for washers and dryers; Zhuo, who was privy to sensitive costing information in refrigeration; and, Kratzsch, who served as a point person for communications with the United States Consumer Product Safety Commission ("CPSC"), and had close familiarity with GE Appliances' most sensitive dishwasher-related safety and compliance related information.

10. In March 2025, Midea's apparent plan to secure the Company's confidential and proprietary information by simply hiring away the GE Appliances technical experts and engineers who created and possessed that information became clear. In March 2025, Allgeier, who had worked with sensitive costing and design information in refrigeration, abruptly resigned, telling GE Appliances he was going to work for Midea. Most recently, on March 27, 2025, Armstrong, one of the Company's most senior employees in research and development who had been with the Company for more than 22 years, also left for Midea. Armstrong headed up the Company's cooking advanced technology engineering group and was deeply involved in the review and evaluation of confidential and proprietary technologies and inventions for feasibility to become patented.

11. Upon information and belief, Midea is intentionally targeting the GE Appliances' employees with the most sensitive Company confidential information

and trade secrets, and placing them in positions similar to those they held at GE Appliances working on directly competitive products in cooking, refrigeration, dishwashers, washers, and dryers with the intent that they will disclose and use GE Appliances' confidential and proprietary information to unfairly compete with GE Appliances.

12. Instantly, and at a significant cost to GE Appliances, Midea has wrongfully gained a team of experienced product developers with the most sensitive secrets of its direct competitor spanning the entire consumer appliance business, all without having to invest the capital and time necessary to develop those secrets for itself.

13. This is not the first time Midea has done this. In 2024, upon information and belief Midea recruited several senior GE Appliances' design/engineering employees including Matt Davis ("Davis"), GE Appliances' Design Director—Refrigeration, who had been with the Company for more than 26 years. Upon information and belief, at least two of the Targeted Employees and potentially other employees, including without limitation, Gregory Chernov, were lured away from GE Appliances by Davis. Midea's targeted raid of GE Appliances' employees has become significantly more aggressive during the past few months.

14. To protect its business interests and confidential and proprietary information, GE Appliances required each Targeted Employee as a condition of his

employment to sign an Employee Innovation and Proprietary Information Agreement ("EIPIA"), promising, among other things, to keep GE Appliances' confidential and proprietary information confidential, and to not use or disclose that information except as Company duties required. A true and correct copy of the EIPIA is attached hereto as **Exhibit A**.

15. Once Midea's design to exfiltrate GE Appliances' trade secrets and confidential information came into focus in March 2025, GE Appliances notified Midea of the Targeted Employees' continuing obligations to the Company and requested that Midea provide information about the Targeted Employees' specific roles at Midea and assurances that Midea had not used, and would not use the Company's confidential and proprietary information. Midea committed to follow-up with GE Appliances' counsel with respect to any assurances it was willing to provide. Thus far Midea has said that it is "evaluating [the] requests" and "plan[ned] to respond with substance", but Midea has largely failed to provide the requested information or assurances.

16. GE Appliances thus seeks this Court's assistance in maintaining the status quo by preventing Midea from misappropriating and otherwise using or disclosing the Company's trade secrets, and confidential and proprietary information for its own benefit, or engaging in unfair competition. GE Appliances further seeks the Court's assistance in retrieving any confidential and proprietary information that

the Targeted Employees may have brought to Midea, which is now in Midea's possession, and in compensating GE Appliances for all damages sustained as a result of the improper actions alleged herein.

## THE PARTIES

17. GE Appliances is a Delaware corporation with its headquarters and principal place of business located at 4000 Buechel Bank Road, Louisville, Kentucky 40225.

18. GE Appliances develops and markets household appliances such as washing machines, refrigerators, dishwashers, and cooktops. GE Appliances develops new and cutting-edge products to meet its consumers' changing needs, and its success in the marketplace depends in large part on developing patents and processes relating to safety and efficiency relating to its products which information is confidential and proprietary.

19. Midea is a Florida corporation with its headquarters and principal place of business located at 300 Kimball Drive, Suite 201, Parsippany, New Jersey 07054. Upon information and belief, Midea's recruitment and human resources functions are carried out from its Parsippany, New Jersey location.

20. Midea develops and markets household products such as washing machines, refrigerators, dishwashers, and cooktops. Midea is a direct competitor of GE Appliances in those product lines.

21. In October 2024, Midea expanded its Louisville, Kentucky plant at the "Midea America Research Center" (the "Research Center"), by some 400%, with the stated purpose being to "innovate and develop cutting-edge products" to compete with market participants like GE Appliances and others. The Research Center included "additional laboratory and office space." Upon information and belief, by putting substantial capital investment toward the Research Center expansion, Midea was wagering that its resulting "innovation in the United States" through research and development efforts at the Research Center would yield competitive advantage and, thus, high returns.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction over this action (a) pursuant to 28 U.S.C. § 1331 as one of GE Appliances claims arises under the laws of the United States; (b) under 28 U.S.C. § 1332(a), as GE Appliances and Defendant are citizens of different states and the amount in controversy exceeds $75,000, as the matter involves the misappropriation of valuable trade secrets and confidential and propriety information that relate to assets valued vastly in excess of that amount; and, (c) under 28 U.S.C. § 1367(a), as the remainder of GE Appliances state law claims are so related to its federal law claim that the state law claims form part of the same case or controversy.

23. This Court has personal jurisdiction over Defendant, as Defendant's headquarters and principal place of business is in New Jersey and, upon information and belief, the claims asserted herein arise out of the acts and omissions of the Defendant committed in the States of New Jersey.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to GE Appliances' claims occurred in this District.

## GE APPLIANCES PROTECTS ITS CONFIDENTIAL INFORMATION AND TRADE SECRETS

25. GE Appliances takes appropriate steps to ensure that the confidentiality of its trade secrets, and confidential and proprietary information is protected.

26. GE Appliances requires employees to sign an EIPIA promising both not to use, publish or otherwise disclose any secret, restricted, confidential, or proprietary information or data of the Company (except as required to perform an employee's job duties), and to return and not maintain in their possession all Company property, including without limitation all items that are of a secret, restricted, confidential or proprietary nature relating to the Company's business.

27. GE Appliances implements its "Appliances Data & Document Classification Guidelines" expressly describing the data and document classification and security of GE Appliances' documents to ensure that employees understand the confidential and sensitive nature of the type of information and data to which they

may—or may not—have access. Company information is classified as public, internal, confidential or restricted. "Confidential" information may only be disclosed under a non-disclosure agreement or other confidentiality terms, and "restricted" information is "highly sensitive or private, of highest value to the Company, or intended for use only be specific individuals." Disclosure is significantly limited. A true and correct copy of the Appliances Data & Document Classification Guidelines is attached here as **Exhibit B**.

28. GE Appliances trains employees on identifying trade secrets and confidential and proprietary information and maintaining the confidentiality of the foregoing information.

29. Because GE Appliances' confidential information and trade secrets derive their competitive value from their secrecy, the Company maintains such information in a confidential manner, including employing the above-referenced employee agreements, using secure network firewalls, password-protected databases, and network sign-in banners.

30. Company employees who resign to work for a competitor are escorted off Company property the same day and their system access is turned off to protect Company confidential information and trade secrets.

31. The Company asks all departing employees who signed the EIPIA during their employment to sign a Reminder of Continuing Confidentiality and

Intellectual Property Obligations ("Reminder of Obligations") certifying that the departing employee signed the EIPIA, "read and understood" the EIPIA, and promised to abide by its terms. The Reminder of Obligations reminds the departing employee not to "use or disclose to others, including any future employer(s), any of the Company's secret or confidential information, including intellectual property, to which [he] had access while employed by the Company" and to contact his Labor and Employment Counsel, Intellectual Property Counsel, and/or business Human Resources Manager regarding "any questions regarding what information and/or intellectual property are considered to be secret and confidential and/or the scope of your continuing obligations."

**TRADE SECRETS**

32. The Targeted Employees had access to and routinely used Company confidential and proprietary information and trade secrets, including without limitation the following: non-public invention disclosures, technologies and information, and pre-patent product development and innovations; processes, methods, means, and standards involved in the Company's innovation development programs, including without limitation the Unlocking Innovation and Shark Tank Programs; research and development of new product designs and development; sales

volume and projected sales volume; development and management of intellectual property; and, algorithms and evaluation procedures for testing products.[1]

## THE TARGETED EMPLOYEES

33. Each Targeted Employee signed the EIPIA attached hereto as ***Exhibit A***.

34. Each Targeted Employee promised in his EIPIA, among other things, as follows:

(A) "at the Company's request, or upon any termination (or other ending) of my employment to deliver to the Company promptly all items that belong to the Company or its parent, subsidiaries or affiliates or that by their nature are for the use of Company employees only, including, without limitation, all written and other materials that are of a secret or confidential nature relating to the business of the Company or its affiliates".

(B) not to "use, publish or otherwise disclose (except as my Company duties may require), either during or subsequent to my employment, any secret*, restricted*, confidential* or proprietary information or data of the Company or its parent, subsidiaries or affiliates or any information or data of others that the Company or its parent, subsidiaries or affiliates are obligated to maintain in confidence…." The EIPIA defines the terms "secret", "restricted", "confidential"

[1] GE Appliances will provide a more specific list of trade secrets under appropriate confidentiality orders.

or "proprietary" generally to include "any information or data that is not generally known – regardless of whether such information or data is oral, written, machine readable or other form."

(C) "except as required in performing my duties for the Company, I will not remove from Company's facilities any Company confidential, restricted, secret or proprietary information including, but not limited to, equipment, drawings, notes, reports, manuals, invention records, software, customer information, logs or other data or other material, whether produced by me or obtained from Company, including, but not limited to, the copying, storing or transmitting of such information via Personal Digital Assistants, mobile phones, tablets, external hard drives, USB 'flash' drives, USB or similar storage devices, network storage devices or Internet sites, FireWire storage devices, floppy discs, CD's, DVD's, personal email accounts (including web-based email accounts such as Hotmail, Gmail, Yahoo), memory cards, Zip discs, and other media or devices which can be used to transmit or store electronic data ('Devices')".

35. As alleged herein, all Targeted Employees, except Armstrong, signed the Reminder of Obligations.

**James Armstrong**

36. Armstrong began working for GE Appliances in May 2002, and was hired into the Company's Edison Engineering Development Program. Armstrong

was most recently employed as a Technical Director, Advanced Systems—Cooking Development. On March 27, 2025, Armstrong informed the Company that he was resigning to join Midea. Armstrong is the most recent, and most significant, target of Midea's poaching scheme.

37. Armstrong's responsibilities focused on cutting-edge product development for cooking. Armstrong headed up GE Appliances' advanced development cooking technology engineering group and focused on innovations and breakthrough cooking technologies to allow the Company to compete. He was the point person for joint development partnership agreements between GE Appliances and its partners. Armstrong served as the Patent Review Board Lead for cooking, managed the patent process, had significant knowledge of the Company's patent program and access to the Company's cooking patent files and process for reviewing invention disclosures, and was in charge of the competitive review of other Company products with respect to patents. Armstrong's LinkedIn profile reflects these and other duties he performed at GE Appliances. A true and correct copy of Armstrong's LinkedIn profile is attached hereto as **Exhibit M**. [2]

38. As part of his job at GE Appliances, Armstrong worked closely with GE Appliances non-public, confidential, and proprietary information and some of

[2] www.linkedin.com/in/james-armstrong-5b28a24 (last visited April 21, 2025).

the Company's most sensitive secrets, including its patent files, related to cooking products. In particular:

(A) Armstrong led the review of proprietary, pre-patent innovations to evaluate their feasibility for patent applications, and was thereby exposed to the Company's cutting-edge cooking-related inventions and innovations that remain confidential and proprietary to this day;

(B) Armstrong reviewed and evaluated invention disclosures—both cooking and non-cooking related—that were submitted through the Company's inventions portal and that contained confidential and proprietary technologies and innovations of the Company. Armstrong would present certain disclosures to the Company's Patent Review Board, where he would discuss and troubleshoot those proprietary technologies and innovations to evaluate their feasibility to become patented technologies of the Company, including technologies and information that remain confidential and proprietary to this day.

(C) Armstrong developed and oversaw "Unlocking Innovation," an internal GE Appliances contest designed to incentivize and encourage GE Appliances engineers to create innovative technologies for possible patents, to assist the Company to compete in the cooking market. The process, methods, means, and standards involved in the Unlocking Innovation

program, themselves, are confidential and proprietary information of the Company, and the program generated numerous innovations that Armstrong reviewed, evaluated, trouble-shot and became intimately familiar with, including technologies and information that remain confidential and proprietary to this day.

(D) Armstrong developed and implemented GE Appliances' proprietary responses to energy standards applicable to the Company's products that, if disclosed or used by competitors, would result in competitive harm to GE Appliances.

(E) Armstrong oversaw GE Appliances' confidential and proprietary process for competitive benchmarking in the cooking market, whereby the Company evaluated competitors' potentially infringing products, analyzed market conditions to develop proprietary market trend analyses and to determine competitors' priorities that shape GE Appliances' strategic research, development and marketing priorities. The methods, means, and content of such market analyses, and the strategic advice and resulting strategy decisions resulting from such analyses, comprise confidential and trade secret information that, if disclosed to or used by a competitor, would result in competitive harm to GE Appliances.

39. An example of a specific confidential and proprietary innovation with which Armstrong was intimately familiar when Midea recruited and hired him, involved the research and development of a technology and prototype produced jointly with another company, pursuant and subject to confidentiality and non-disclosure agreements, that was designed to address an important engineering issue through new designs, technologies, and algorithms that would enable GE Appliances to gain a competitive advantage in the cooking market. Armstrong was at the heart of this project and, were the related innovations and technologies with which he is intimately familiar to be used by or disclosed to a competitor, it would result in competitive harm to GE Appliances.

40. Another example of a specific confidential and proprietary innovation with which Armstrong was intimately familiar when Midea recruited and hired him involved ongoing internal deliberations, analysis, research and development of a project that would address a key issue that would give GE Appliances a substantial competitive advantage in the cooking market. Confidential information and trade secrets related to this project hold significant commercial value to competitors and, were they used by or disclosed to a competitor, would cause GE Appliances competitive harm to GE Appliances.

41. Many of the projects on which Armstrong worked at GE Appliances are ongoing and non-public, meaning that information Armstrong possesses generally remains confidential and proprietary.

42. These are but a few examples of competitively sensitive and valuable confidential information and trade secrets that Armstrong possesses that, if used by or disclosed to a competitor, would cause GE Appliances irreparable harm.

43. Armstrong resigned on March 27, 2025, at which time the Company furnished Armstrong a Reminder of Obligations and requested that he sign it that day, in accordance with its general practice. The Company did not receive the signed Reminder of Obligations and followed up with Armstrong.

44. On March 30, 2025, in response to the Company's repeated requests for the signed Reminder of Obligations, Armstrong asked the Company for a copy of his EIPIA. The next day, the Company provided Armstrong with the EIPIA he signed.

45. On April 1, 2025, GE Appliances' human resources personnel met with Armstrong to deliver personal property Armstrong left at the GE Appliances facility. During that meeting, Armstrong was again asked for the signed Reminder of Obligations. Armstrong questioned why he had to sign the Reminder of Obligations and relayed that he had an attorney reviewing it. Human resources personnel asked

Armstrong to contact her after he had the document reviewed by his counsel. Armstrong assured her he would, but he has not done so.

46. On April 10, 2025, in response to GE Appliances' letter dated April 4, 2025, referenced below, Midea's in-house counsel assured GE Appliances' counsel that he would call Armstrong immediately and ask him to sign the Reminder of Obligations. GE Appliances has not yet received Armstrong's signed Reminder of Obligations, or any update from Midea regarding the status of Armstrong signing the Reminder of Obligations.

47. Upon information and belief, Armstrong began working for Midea immediately after his resignation from GE Appliances.

**Brian Allgeier**

48. Allgeier began working for GE Appliances in January 2018 and was most recently employed as a Senior Design Engineer, Refrigeration Features and Appearance

49. GE Appliances hired Allgeier from college into the Company's Edison Engineering Development Program.

50. Allgeier's responsibilities focused on refrigeration features and appearance, and according to his LinkedIn profile, beginning in 2022, Allgeier performed the following in his role as a GE Appliances Senior Design Engineer for Refrigeration:

> Lead multiple material-cost-out projects with cross-functional team involving sourcing, quality, reliability, and manufacturing to reduce yearly manufacturing cost by several million dollars.
>
> Invented, prototyped, and patented multiple concepts for enhanced user experience and unique features while optimizing assembly methods for increased efficiency and product reliability.

A true and correct copy of Allgeier's LinkedIn profile is attached hereto as **Exhibit C**. [3]

51. As part of his job, Allgeier was afforded access to GE Appliances' non-public, confidential, and proprietary information and trade secrets including without limitation costing information, projects involving the re-design of refrigeration features, and information relating to the development of refrigeration parts under consideration by the Company but not yet in the public market.

52. At the time he separated from GE Appliances, Allgeier was working on confidential and proprietary designs and innovations that GE Appliances was contemplating including in a patent application.

53. Many of the projects on which Allgeier worked at GE Appliances are ongoing, meaning that information Allgeier possesses generally remains confidential and proprietary.

[3] www.linkedin.com/in/brian-allgeier-890425a5 (last visited April 21, 2025).

54. If the designs and innovations, and other information Allgeier possesses were to be used by or disclosed to a competitor, it would result in competitive harm to GE Appliances.

55. Allgeier resigned from GE Appliances effective March 14, 2025 and signed the Reminder of Obligations. A true and correct copy of Allgeier's signed Reminder of Obligations is attached hereto as **Exhibit D**.

56. At the time he resigned, Allgeier told his manager that he was going to work for Midea.

57. Upon information and belief, Allgeier began working for Midea after his resignation from GE Appliances.

**Cody Ewing**

58. Ewing began working for GE Appliances in or about January 2019, and was most recently employed as a Senior Design Engineer primarily responsible for washing machines.

59. Upon information and belief, prior to joining GE Appliances, Ewing had no prior experience working with washing machines and the knowledge and information he brought to Midea was learned as a result of his position with GE Appliances and the investment and training GE Appliances made in Ewing.

60. Ewing's responsibilities for GE Appliances focused on the clothing care appliance market, and according to his resume posted on his LinkedIn profile,

Ewing performed the following functions as a GE Appliances Design Engineer and Senior Design Engineer from September 2021 until his departure from GE Appliances:

- Led multiple projects through change process such as new component tools or capacity tools
- Pioneered new algorithm on certain washer models to significantly reduce wet load rates
- Created and submitted IP for top-load washers such as a new suspension design and new algorithms
- Supported NPI programs, as well as scoped future programs
- Edited parametric software to create custom cycle maps for test units
- Co-lead Mechanical Engineering Foundations training program for Mechanical co-ops
- Performed analysis of several competitor units to fully understand spin ramp profiles, out of balance handling, agitate stroke characteristics, and water levels
- Assisted with NPI builds to monitor quality concerns
- Diagnose test unit and field return failures through fault codes and physical inspection
- Assisted with "run the plant" activities including several new tool qualifications

A true and correct copy of Ewing's LinkedIn profile is attached hereto as **<u>Exhibit E</u>**.[4]

61. As part of his job, Ewing was afforded access to GE Appliances' non-public, confidential, and proprietary information and trade secrets. For example, Ewing was intimately involved in the development of new products and had valuable

[4] www.linkedin.com/in/cody-ewing-369bb5148 (last visited April 21, 2025).

visibility into new products the Company planned to introduce, as well as its current and projected sales volumes.

62. As an example of specific confidential and proprietary information to which Ewing had access at the time he left the Company, Ewing was performing developmental work on a specific product issue. He identified opportunities the Company could leverage to address that issue and was deeply involved in analyzing ways to accomplish that strategic goal. This project could potentially lead to a patent and is still ongoing at the Company today. If that confidential and proprietary information falls into the hands of a competitor like Midea, it would result in competitive harm to GE Appliances.

63. Additionally, at the time Ewing left the Company for Midea, he was involved in other investigations for the Company that could have led, and still could lead, to the Company filing for and obtaining patents that would provide it competitive protection into the future. If that confidential and proprietary information falls into the hands of a competitor like Midea, it would result in competitive harm to GE Appliances.

64. Many of the projects on which Ewing worked at GE Appliances are ongoing, meaning that information Ewing possesses generally remains confidential and proprietary.

65. Upon information and belief, Ewing was recruited by Midea.

66. Ewing resigned from GE Appliances effective January 9, 2025 and signed the Reminder of Obligations. A true and correct copy of Ewing's signed Reminder of Obligations is attached hereto as **Exhibit F**.

67. Upon information and belief, and according to Ewing's LinkedIn profile, Ewing began working for Midea as a Regulator/R&D Engineer-Laundry—in a role like, and working in the same product category as, his former role at GE Appliances—shortly after his resignation from GE Appliances.

**Adam Hofmann**

68. Hofmann began working for GE Appliances in or about April 2003 and was most recently employed by the Company as a Director, Engineering—Dishwasher Digital and Advanced Systems.

69. Upon information and belief, prior to joining GE Appliances, Hofmann had no prior experience working in the industry, and the knowledge and information he brought to Midea was learned as a result of his position with GE Appliances and the investment and training GE Appliances made in Hofmann.

70. In his Director, Engineering—Dishwasher Digital and Advanced Systems role, Hofmann led research and development for the dishwasher product line, created a pipeline of new technologies and innovations for future dishwasher launches, and had overall responsibility for intellectual property and patent evaluations relating to dishwashers. He served as a patent evaluation board leader

and, in that role, learned confidential and proprietary information relating to potential patents before patent applications were filed.

71. Hofmann was afforded access to GE Appliances' non-public, confidential, and proprietary information and trade secrets, including the most sensitive information relating to dishwasher development. Hofmann was the primary person responsible for creating new intellectual property and developing intellectual property in process for the dishwashing line, was intimately involved in the Company's priorities relative to its intellectual property portfolio, and had details about new products before those products were made public.

72. At the time Hofmann left GE Appliances, he was working on several sensitive projects involving GE Appliances' confidential and proprietary information. Hofmann was developing a new system for a dishwasher that was significantly different from anything the Company or any of its competitors had developed; was at the heart of a dishwasher project involving the Company and a third-party (subject to a non-disclosure and collaboration agreement) that, if successful, would introduce a new and innovative product not yet on the market; and, was working on approximately one dozen other new products.

73. Many of the projects on which Hofmann worked at GE Appliances are ongoing, meaning that information Hofmann possesses generally remains confidential and proprietary.

74. Hofmann's LinkedIn profile acknowledges these duties and states that from August 2024 through December 2024, his responsibilities included:

- Leading the patent review board
- Delivering Intellectual Property to the business that will help set the framework for future product development
- Dishwasher cycle design to meet energy regulations
- Connected dishwasher algorithm development to maximize product intelligence, automated diagnostics, and consumer value

A true and correct copy of Hofmann's LinkedIn profile is attached hereto as **Exhibit G**.[5]

75. Upon information and belief, Hofmann was recruited by Midea. Hofmann resigned from GE Appliances effective December 13, 2024 and signed the Reminder of Obligations. A true and correct copy of Hofmann's signed Reminder of Obligations is attached hereto as **Exhibit H**.

76. Upon information and belief, and according to Hofmann's LinkedIn profile, Hofmann began working for Midea as a Senior Staff R&D Engineer-CRC Innovation at the Midea America Research Center—and working in the same product category as, his former role at GE Appliances—shortly after his resignation from GE Appliances.

[5] https://www.linkedin.com/in/adam-hofmann-7739108/ (last visited April 21, 2025).

**Kyle Kratzsch**

77. Kratzsch began working for GE Appliances in or about May 2000, and was most recently employed as the Director of Product Safety and Reliability—Dishwasher. In this role, Kratzsch conducted pre-market reviews of products GE Appliances planned to launch ensuring they met standards and safety requirements.

78. As part of his job, Kratzsch was afforded access to GE Appliances' non-public, confidential, and proprietary information and trade secrets.

79. At the time he left GE Appliances for its competitor, Midea, Kratzsch knew of and worked on any and all issues and trends relating to the safety of the Company's products. Kratzsch is intimately familiar with the Company's evaluation and decision-making process relating to these issues, which in and of itself is confidential and trade secret information and if that process, or any and all of the non-public safety-related matters to which is its applied, are used or disclosed to a competitor, it would result in competitive harm to GE Appliances.

80. Kratzsch was privy to submissions GE Appliances made to CPSC, and associated correspondence. If a competitor like Midea learned of these sensitive communications between the Company and CPSC, that would result in competitive harm to the Company.

81. Many of the projects on which Kratzsch worked at GE Appliances are ongoing, meaning that information Kratzsch possesses generally remains confidential and proprietary.

82. Kratzsch resigned from GE Appliances effective January 29, 2025 and signed the Reminder of Obligations. A true and correct copy of Kratzsch's signed Reminder of Obligations is attached hereto as **Exhibit I**.

83. Kratzsch began working for Midea shortly after his resignation from GE Appliances, and according to his LinkedIn profile is working there as a Senior Principal Product Safety Engineer.[6] A true and correct copy of Kratzsch's LinkedIn profile is attached hereto as **Exhibit J**.

**Jason Zhuo**

84. Zhuo began working for GE Appliances in or about July 2013 in its Edison Engineering Development Program and, most recently, was employed as the Principal Design Engineer in refrigeration.

85. Zhuo participated in the GE Appliances "Edison Engineering Development Program". Zhuo had no previous experience in the industry, and the knowledge and information he brought to Midea was learned as a result of his position with GE Appliances and the investment and training GE Appliances made in Zhuo.

---

[6] www.linkedin.com/in/kyle-kratzsch-13b94a9a (last visited April 21, 2025).

86. As part of his job, Zhuo was afforded access to GE Appliances' non-public, confidential, and proprietary information and trade secrets. For example, Zhuo was privy to intellectual property GE Appliances was pursuing, knew and understood the Company's cost positions, was familiar with the Company's suppliers, and the algorithms and evaluation procedures used for testing products. If a competitor like Midea learned of this confidential and proprietary information, that would result in competitive harm to the Company.

87. Many of the projects on which Zhuo worked at GE Appliances are ongoing, meaning that information Zhuo possesses generally remains confidential and proprietary.

88. Zhuo resigned from GE Appliances effective January 14, 2025 and, upon information belief, resigned because he was recruited by Midea. Zhuo signed the Reminder of Obligations. A true and correct copy of Zhuo's signed Reminder of Obligations is attached hereto as **Exhibit K**.

89. Upon information and belief, and according to his LinkedIn profile, Zhuo began working for Midea shortly after his resignation from GE Appliances as a Principal R&D Engineer. A true and correct copy of Zhuo's LinkedIn profile is attached hereto as **Exhibit L**. [7]

[7] www.linkedin.com/in/wentao-zhuo-22660544 (last visited April 21, 2025).

**Midea Is Advised Of Potential Information Breaches**

90. By letter dated March 5, 2025, GE Appliances, through its counsel, advised Midea of potential information security breaches and misappropriation of GE Appliances' confidential business and trade secret information as a result of Midea employing Ewing, Hofmann, Kratzsch and Zhuo—the four Targeted Employees who had resigned from GE Appliances after their recruitment by Midea. GE Appliances also requested through its March 5, 2025 letter that Midea take affirmative measures to avoid accessing or using GE Appliances' trade secret and confidential information; that Midea provide GE Appliances with the titles, employment dates, and job descriptions of Ewing, Hofmann, Kratzsch, and Zhuo; and, that Midea affirm that after a review of the their email accounts and electronic devices in Midea's possession or control, that Midea had not received or used any of GE Appliances' confidential or trade secret information from Ewing, Hofmann, Kratzsch or Zhuo.

91. Midea did not respond to the March 5, 2025 letter from GE Appliances' counsel. Instead, Midea poached Allgeier and Armstrong, who resigned from GE Appliances to join Midea. Those March 2025 resignations brought into focus Midea's design to exfiltrate GE Appliances' trade secrets and confidential information by poaching the Company's key technical and R&D professionals who possessed them, and by employing those former employees at Midea in roles like

they held at GE Appliances, making it impossible for those former employees not to use or disclose the Company's secrets in violation of the EIPIAs.

92. By letter dated April 4, 2025, GE Appliances, through its counsel, again advised Midea of potential information security breaches and misappropriation of GE Appliances' confidential business and trade secret information—this time as a result of the six Targeted Employees' employment with Midea and most recent recruiting of a very senior Company employee, Armstrong. GE Appliances also requested through its April 4, 2025 letter that Midea take affirmative measures to avoid accessing or using GE Appliances' trade secret and confidential information; that Midea provide GE Appliances with the titles, employment dates, and job descriptions of the Targeted Employees; and, that Midea affirm that after a review of the Targeted Employees' email accounts and electronic devices in Midea's possession or control, that Midea had not received or used any of GE Appliances' confidential or trade secret information from the Targeted Employees. Because Allgeier and Armstrong's resignations brought about increased urgency, GE Appliances requested a response no later April 8, 2025.

93. While Midea acknowledged receipt of the letter on April 5, 2025, it failed to timely respond to the April 4, 2025 letter.

94. Midea's Head of Legal—North America, Paul Colonna ("Colonna"), finally arranged to speak with GE Appliances' outside counsel on April 10, 2025.

During that call, Colonna volunteered to call Armstrong immediately after his conversation with GE Appliances' counsel and ask Armstrong to sign the Reminder of Obligations. Colonna also asked what assurances GE Appliances wanted from Midea.

95. During the April 10, 2025 call, Colonna was asked to disclose the measures Midea had in place to ensure that the Targeted Employees are not using or disclosing GE Appliances' confidential information in the performance of their duties for Midea, and for a signed representation that, if Midea inadvertently obtained GE Appliances' confidential information, Midea would not use it. Colonna was further was asked to disclose the information requested in the April 4, 2025 letter; namely, the positions and duties of each Targeted Employee. Colonna further was advised by GE Appliances' counsel that GE Appliances was looking for this information no later than Friday, April 11, 2025.

96. Colonna advised GE Appliances' counsel on Saturday, April 12, 2025, that Midea was "evaluating your requests".

97. On April 21, 2025, GE Appliances' counsel gave notice to Midea, through Colonna, that it would be filing a Complaint and Application for Order to Show Cause with Temporary Restraints. Shortly thereafter, Colonna requested a call with GE Appliances' counsel.

98. On April 21, 2025, GE Appliances, through its counsel, again requested the assurances and information GE Appliances had been seeking from Midea since March 5, 2025. Colonna was notified that if GE Appliances' counsel did not hear from Midea by 10:00 a.m. on April 22, 2025, GE Appliances would file the Complaint and Application for Order to Show Cause with Temporary Restraints.

99. GE Appliances counsel and Colonna spoke on April 22, 2025, during which time Midea was given 24 hours in which to agree to provide the assurances and information GE Appliances had been requesting since March 5, 2025, so that GE Appliances could review the information and determine whether litigation would be necessary to protect its confidential, proprietary, or trade secret information and data.

100. On April 23, 2024, Midea notified GE Appliances' counsel that it "plan[ned] to respond with substance today", but GE Appliances received only a limited response, which provided certain information and assurances but not the full information and assurances GE Appliances had requested. Counsel for GE Appliances followed up with a final request to Midea which was unanswered. Midea has not as of yet provided the assurances and information GE Appliances has been requesting since March 5, 2025, or Armstrong's signed Reminder of Obligations.

101. Upon information and belief, Midea has employed and intends to employ the Targeted Employees in Midea roles that are substantially similar to,

working on the same product lines as, the roles in which the Targeted Employees worked while employed at GE Appliances for the purpose of causing those employees to disclose and use GE Appliances' confidential information and trade secrets so that Midea can unfairly compete with GE Appliances.

**FIRST CLAIM FOR VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1831 *ET SEQ.***

102. GE Appliances repeats and re-alleges each and every allegation in the Complaint as if fully set forth below.

103. GE Appliances owns and possesses confidential, proprietary and trade secret information, including without limitation, GE Appliances' non-public invention disclosures, technologies and information, and pre-patent product development and innovations; processes, methods, means, and standards involved in the Company's Unlocking Innovation Program; research and development of new product designs and development; sales volume and projected sales volume; development and management of intellectual property; evaluation of potential safety issues and development and implementation of measures to resolve potential safety issues; and, algorithms and evaluation procedures for testing products.

104. GE Appliances has taken reasonable steps to keep its trade secrets confidential and secret, including, but not limited to, requiring its employees, contractors and others to enter into agreements that impose strong confidentiality obligations and limitations on the use and disclosure of GE Appliances' trade

secrets, and adopting policies and training regarding the treatment of confidential information, and including non-disclosure agreements in its agreements with third parties prior to providing access to confidential information.

105. GE Appliances' trade secrets derive independent economic value from not being readily known to, or ascertainable through proper means, by other persons who could obtain economic value from their disclosure or use.

106. As a result of the above, GE Appliances' trade secrets qualify as trade secrets within the scope and meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, which prohibits the intentional conversion, theft, misappropriation or threatened misappropriation, or unauthorized use of trade secrets related to a product or service used in or intended for use in interstate or foreign commerce for the economic benefit of anyone other than the owner of the trade secrets. 18 U.S.C. § 1832(a).

107. Upon information and belief, Midea employs the Targeted Employees in positions similar to those they held at GE Appliances, and the Targeted Employees are likely to rely on, draw from, use, and disclose GE Appliances' confidential and proprietary information and trade secrets in the performance of their duties, to Midea's benefit. This conduct has caused, and continues to pose, a threat of misappropriation for which the only adequate remedy is injunctive relief.

108. Upon information and belief, Midea has acquired, used, and/or disclosed, and continues to acquire, use, and/or disclose, GE Appliances' trade secrets without GE Appliances' consent. Midea knew or had reason to know that such trade secrets were acquired by improper means or under circumstances giving rise to a duty to maintain their secrecy and/or confidentiality.

109. Upon information and belief, if Midea is not enjoined, Midea will continue to misappropriate, use and disclose GE Appliances' trade secrets for its benefit, including substantial costs savings, with a consequent competitive advantage, to Midea, to the detriment of GE Appliances.

110. As a direct and proximate result of Midea's threatened misappropriation of GE Appliances trade secrets, GE Appliances has suffered and will continue to suffer irreparable injury and significant damages in an amount to be proven at trial, unless and until Midea's conduct is enjoined. Such damage includes, without limitation, injury to GE Appliances' relationships with its current and prospective customers, injury to GE Appliances' business reputation, decrease in market share for the product lines alleged herein, and impediment to GE Appliances' ability to grow and maintain its customer base in a highly competitive business environment.

WHEREFORE, GE Appliances demands judgment on the First Claim of the Complaint as follows:

(A) Temporarily, preliminarily and permanently enjoining Midea and all parties in active concert with Midea, from using, disclosing or further disseminating confidential or proprietary information or information not generally known to others outside of GE Appliances that Midea obtained as a result of hiring the Targeted Employees;

(B) Ordering Midea to return to GE Appliances all originals and copies of any confidential, proprietary, or trade secret information of GE Appliances in its possession, custody or control;

(C) Directing Midea to cause any electronic copies of GE Appliances confidential, proprietary, or trade secret information identified on Midea's computers, network, systems, online accounts, or any other electronic storage devices, media, or locations, including but not limited to cloud-based servers and accounts to be forensically removed;

(D) Granting GE Appliances provisionary relief in the form of expedited discovery, including:

(i) Requiring Midea to disclose to GE Appliances the following information for each Targeted Employee: (1) title, position, and department with Midea; (2) start date at Midea; (3) specific job description and duties with Midea including specific projects each Targeted Employee has been working

on since joining Midea; (4) the supervisor's name and position and duties; and (5) company e-mail address with Midea

(ii) Pre-Hire communications with, and personnel files of, each Targeted Employee

(iii) Specific protections Midea has put into place to protect against disclosure or use of GE Appliances confidential or proprietary information

(iv) Forensic review of the Targeted Employees' emails to determine whether GE Appliances confidential information has been shared

(v) Depositions of the Targeted Employees and a representative of Midea to investigate the extent of overlap between their positions at GE Appliances and Midea

(E) Awarding GE Appliances compensatory and punitive damages against Midea in an amount to be determined at trial, including without limitation, incidental and consequential damages, lost profits, and amounts representing the diminution in value of GE Appliances' business resulting from Midea's actions; and

(F) Awarding GE Appliances its costs, attorneys' fees and such other and further relief as this Court may deem just and proper.

**SECOND CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE NEW JERSEY TRADE SECRETS ACT, N.J.S.A. 56:15-1 *ET SEQ.***

111. GE Appliances repeats and re-alleges each and every allegation in the Complaint as if fully set forth below.

112. GE Appliances' trade secrets described in the First Claim also constitute trade secrets within the meaning of the New Jersey Trade Secrets Act ("NJTSA"). *See* N.J.S.A. 56:15-2. The NJTSA prohibits the actual or threatened misappropriation of a company's trade secrets. *See* N.J.S.A. 56:15-3.

113. Upon information and belief, in violation of GE Appliances' rights, the Targeted Employees have intentionally, fraudulently, maliciously, and oppressively threatened misappropriation, disclosed, and used, and continue to use, the Company's trade secrets in the manner described in the previous allegations.

114. Upon information and belief, Midea intentionally employs the Targeted Employees in roles substantially similar to those they held at GE Appliances, and on the same product categories as those they held at GE Appliances. In performing these duties, it is inevitable that the Targeted Employees will rely on, draw from, use, and disclose GE Appliances' confidential and proprietary information and trade secrets—information that was misappropriated in violation of their continuing

obligations to GE Appliances. Midea knowingly benefits from this misappropriation, to the detriment of GE Appliances.

115. Upon information and belief, Midea has acquired, used, and/or disclosed, and continues to acquire, use, and/or disclose, GE Appliances' trade secrets without GE Appliances' consent. Midea knew or had reason to know that such trade secrets were acquired by improper means or under circumstances giving rise to a duty to maintain their secrecy and/or confidentiality.

116. Upon information and belief, Midea knew of the EIPIAs and knew of the Targeted Employees' conduct. But Midea benefited from and acquiesced to, and continues to benefit from and acquiesce to, the Targeted Employees' unlawful conduct.

117. As a direct and proximate result of Midea's threatened misappropriation of GE Appliances trade secrets, GE Appliances has suffered and will continue to suffer irreparable injury and significant damages in an amount to be proven at trial, unless and until Midea's conduct is enjoined. Such damage includes, without limitation, injury to GE Appliances' relationships with its current and prospective customers, injury to GE Appliances' business reputation, decrease in market share for the product lines alleged herein, and impediment to GE Appliances' ability to grow and maintain its customer base in a highly competitive business environment.

WHEREFORE, GE Appliances demands judgment on the Second Claim of the Complaint as follows:

(A) Temporarily preliminarily, and permanently enjoining Midea and all parties in active concert with Midea, from using, disclosing or disseminating confidential or proprietary information or information not generally known to others outside of GE Appliances that Midea obtained as a result of hiring the Targeted Employees;

(B) Preliminarily and permanently enjoining Midea and all parties acting in concert with Midea, from employing or engaging any Targeted Employee in any specific role, position, or capacity in which such Targeted Employee will be likely to or inevitably have to use any of GE Appliances confidential, proprietary, or trade secret information or data in order to perform such role;

(C) Ordering Midea to return to GE Appliances all originals and copies of any confidential, proprietary, or trade secret information of GE Appliances in its possession, custody or control;

(D) Directing Midea to cause any electronic copies of GE Appliances confidential, proprietary, or trade secret information identified on Midea's computers, network, systems, online accounts, or any other electronic storage

devices, media, or locations, including but not limited to cloud-based servers and accounts to be forensically removed;

(E) Granting GE Appliances provisionary relief in the form of expedited discovery, including:

(i) Requiring Midea to disclose to GE Appliances the following information for each Targeted Employee: (1) title, position, and department with Midea; (2) start date at Midea; (3) specific job description and duties with Midea including specific projects each Targeted Employee has been working on since joining Midea; (4) the supervisor's name and position and duties; and (5) company e-mail address with Midea

(ii) Pre-Hire communications with, and personnel files of, each Targeted Employee

(iii) Specific protections Midea has put into place to protect against disclosure or use of GE Appliances confidential or proprietary information

(iv) Forensic review of the Targeted Employees' emails to determine whether GE Appliances confidential information has been shared

(v) Depositions of the Targeted Employees and a representative to investigate the extent of overlap between their positions at GE Appliances and Midea

(F) Awarding GE Appliances compensatory and punitive damages against Midea in an amount to be determined at trial, including without limitation, incidental and consequential damages, lost profits, and amounts representing the diminution in value of GE Appliances' business resulting from Midea's actions; and

(G) Awarding GE Appliances its costs, attorneys' fees and such other and further relief as this Court may deem just and proper.

## THIRD CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE

118. GE Appliances repeats and re-alleges each and every allegation in the Complaint as if fully set forth below.

119. GE Appliances entered into EIPIAs with each of the Targeted Employees as a condition of their employment to protect its business, confidential and proprietary information, and trade secrets. At all relevant times, each EIPIA was a valid and enforceable contract.

120. Midea recruited and hired the Targeted Employees between approximately December 2024 and March 2025. Upon information and belief, at

the time the Targeted Employees were recruited and hired, Midea knew that the Targeted Employees had worked at GE Appliances, had access to significant GE Appliances' confidential information, and knew that the Targeted Employees had a duty to keep that information confidential.

121. Upon information and belief, Midea has intentionally interfered with GE Appliances' relationships with its employees, by recruiting and hiring at least six employees, including the Targeted Employees, to perform duties similar to, and in the same product categories as, the ones they performed while employed by GE Appliances for the purpose of inducing the Targeted Employees to breach their EIPIAs by using and disclosing GE Appliances' confidential information to improperly gain a competitive advantage.

122. Midea's interference with the foregoing EIPIAs, GE Appliances' employment relationships with the Targeted Employees, and the Company's prospective economic advantage was and continues to be malicious, intentional, and unjustified.

123. As a direct result of Midea's interference, GE Appliances has been deprived of the contractual benefits of the EIPIAs, including its right to maintain the secrecy of its confidential and proprietary information and to prevent is unauthorized use by a direct competitor.

124. GE Appliances has no adequate remedy at law to prevent this illegal and unfair competition and conduct from continuing.

125. As a proximate result of Midea's wrongful conduct as described above, GE Appliances has suffered actual damages in an amount to be proven at trial.

126. GE Appliances is also threatened with irreparable injury for which it has no adequate remedy at law, if Midea is permitted to continue its intentional and unjustifiable interference with GE Appliances' contracts protecting its confidential information.

WHEREFORE, GE Appliances demands judgment on the Third Claim of the Complaint as follows:

(A) Temporarily, preliminarily, and permanently enjoining Midea and all parties in active concert with Midea, from using, disclosing or disseminating confidential or proprietary information or information not generally known to others outside of GE Appliances that Midea obtained as a result of hiring the Targeted Employees;

(B) Preliminarily and permanently enjoining Midea and all parties acting in concert with Midea from employing or engaging any Targeted Employee in any specific role, position, or capacity in which such Targeted Employee will be likely to or inevitably have to use any of GE Appliances

confidential, proprietary, or trade secret information or data in order to perform such role;

(C) Ordering Midea to return to GE Appliances, all originals and copies of any confidential, proprietary, or trade secret information of GE Appliances in its possession, custody or control;

(D) Directing Midea to cause any electronic copies of GE Appliances confidential, proprietary, or trade secret information identified on Midea's computers, network, systems, online accounts, or any other electronic storage devices, media, or locations, including but not limited to cloud-based servers and accounts to be forensically removed;

(E) Granting GE Appliances provisionary relief in the form of expedited discovery, including:

(i) Requiring Midea to disclose to GE Appliances the following information for each Targeted Employee: (1) title, position, and department with Midea; (2) start date at Midea; (3) specific job description and duties with Midea including specific projects each Targeted Employee has been working on since joining Midea; (4) the supervisor's name and position and duties; and (5) company e-mail address with Midea

(ii) Pre-Hire communications with, and personnel files of, each Targeted Employee

(iii) Specific protections Midea has put into place to protect against disclosure or use of GE Appliances confidential or proprietary information

(iv) Forensic review of the Targeted Employees' emails to determine whether GE Appliances confidential information has been shared

(v) Depositions of the Targeted Employees and a representative of Midea to investigate the extent of overlap between their positions at GE Appliances and Midea

(F) Awarding GE Appliances compensatory and punitive damages against Midea in an amount to be determined at trial, including without limitation, incidental and consequential damages, lost profits, and amounts representing the diminution in value of GE Appliances' business resulting from Midea's actions; and

(G) Awarding GE Appliances its costs, attorneys' fees and such other and further relief as this Court may deem just and proper.

**FOURTH CLAIM FOR COMMON LAW MISAPPROPRIATION OF TRADE SECRETS**

127. GE Appliances repeats and re-alleges each and every allegation in the Complaint as if fully set forth below.

128. GE Appliances' trade secrets described in the First Claim constitute trade secrets. The actual or threatened misappropriation of a company's trade secrets is prohibited.

129. GE Appliances communicated these trade secrets to its employees in confidence, including through signed EIPIAs that expressly prohibited the use or disclosure of confidential or proprietary information outside the scope of employment. GE Appliances also maintained formal confidentiality protocols, including its Data & Document Classification Guidelines, mandatory confidentiality trainings, password-protected systems, secure network infrastructure, and exit procedures requiring employees to sign a Reminder of Continuing Obligations. These measures were designed to—and did—protect the secrecy of GE Appliances' trade secrets and confidential business information.

130. Upon information and belief, in violation of GE Appliances' rights, the Targeted Employees have intentionally, fraudulently, maliciously, and oppressively threatened misappropriation, disclosed, and used, and continue to use, the Company's trade secrets in the manner described in the previous allegations.

131. Upon information and belief, Midea employs the Targeted Employees in positions similar to those they held at GE Appliances, and the Targeted Employees are likely, working on the same product categories as, those they held at GE Appliances, and it is inevitable that the Targeted Employees will rely on, draw from, use, and disclose (and Midea will benefit from) the confidential and proprietary information and trade secrets apparently misappropriated from GE Appliances, all to the detriment of GE Appliances.

132. Upon information and belief, Midea knew of the EIPIAs and knew of the Targeted Employees' conduct. But Midea benefited from and acquiesced to, and continues to benefit from and acquiesce to, the Targeted Employees' unlawful conduct.

133. As a direct and proximate result of Midea's threatened misappropriation of GE Appliances trade secrets, GE Appliances has suffered and will continue to suffer irreparable injury and significant damages in an amount to be proven at trial, unless and until Midea's conduct is enjoined. Such damage includes, without limitation, injury to GE Appliances' relationships with its current and prospective customers, injury to GE Appliances' business reputation, and GE Appliances' ability to grow and maintain its customer base in a highly competitive business environment.

WHEREFORE, GE Appliances demands judgment on the Fourth Claim of the Complaint as follows:

(A) Temporarily preliminarily, and permanently enjoining Midea and all parties in active concert with Midea, from using, disclosing or disseminating confidential or proprietary information or information not generally known to others outside of GE Appliances that Midea obtained as a result of hiring the Targeted Employees;

(B) Preliminarily and permanently enjoining Midea and all parties acting in concert with Midea, from employing or engaging any Targeted Employee in any specific role, position, or capacity in which such Targeted Employee will be likely to or inevitably have to use any of GE Appliances confidential, proprietary, or trade secret information or data in order to perform such role;

(C) Ordering Midea to return to GE Appliances all originals and copies of any confidential, proprietary, or trade secret information of GE Appliances in its possession, custody or control;

(D) Directing Midea to cause any electronic copies of GE Appliances confidential, proprietary, or trade secret information identified on Midea's computers, network, systems, online accounts, or any other electronic storage

devices, media, or locations, including but not limited to cloud-based servers and accounts to be forensically removed;

(E) Granting GE Appliances provisionary relief in the form of expedited discovery, including:

(i) Requiring Midea to disclose to GE Appliances the following information for each Targeted Employee: (1) title, position, and department with Midea; (2) start date at Midea; (3) specific job description and duties with Midea including specific projects each Targeted Employee has been working on since joining Midea; (4) the supervisor's name and position and duties; and (5) company e-mail address with Midea

(ii) Pre-Hire communications with, and personnel files of, each Targeted Employee

(iii) Specific protections Midea has put into place to protect against disclosure or use of GE Appliances confidential or proprietary information

(iv) Forensic review of the Targeted Employees' emails to determine whether GE Appliances confidential information has been shared

(v) Depositions of the Targeted Employees and a representative of Midea to investigate the extent of overlap between their positions at GE Appliances and Midea

(F) Awarding GE Appliances compensatory and punitive damages against Midea in an amount to be determined at trial, including without limitation, incidental and consequential damages, lost profits, and amounts representing the diminution in value of GE Appliances' business resulting from Midea's actions; and

(G) Awarding GE Appliances its costs, attorneys' fees and such other and further relief as this Court may deem just and proper.

**FIFTH CLAIM FOR UNFAIR COMPETITION**

134. GE Appliances repeats and re-alleges each and every allegation in the Complaint as if fully set forth below.

135. GE Appliances entered into EIPIAs with each of the Targeted Employees as a condition of their employment to protect its business, confidential and proprietary information, and trade secrets.

136. Midea recruited the Targeted Employees, in whom GE Appliances invested significant training, resources, time and money, to develop, and all of whom used GE Appliances' secret, restricted, confidential or proprietary information or data.

137. Midea placed the Targeted Employees in positions performing duties similar to, and likely, working on the same product categories as, the ones they performed while employed by GE Appliances and which result in the Targeted Employees' inevitable disclosure of GE Appliances' secret, restricted, confidential or proprietary information or data. Such conduct results in Midea wrongfully accessing the secret, restricted, confidential or proprietary information or data of GE Appliances to Midea's benefit and competitive advantage.

138. The inevitable disclosure and use of the secret, restricted, confidential or proprietary information to Midea is contrary to the notion of free competition that is fair.

139. By virtue of the foregoing, Midea has engaged in unfair competition and will continue to compete unfairly with GE Appliances if permitted to use GE Appliances confidential information and continue recruiting GE Appliances employees that will inevitable disclose GE Appliances confidential information and trade secrets if performing duties for Midea similar to the ones performed for GE Appliances.

WHEREFORE, GE Appliances demands judgment on the Fifth Claim of the Complaint as follows:

(A) Temporarily, preliminarily, and permanently enjoining Midea and all parties in active concert with Midea, from using,

disclosing or disseminating confidential or proprietary information or information not generally known to others outside of GE Appliances that Midea obtained as a result of hiring the Targeted Employees;

(B) Preliminarily and permanently enjoining Midea and all parties acting in concert with Midea, from employing or engaging any Targeted Employee in any specific role, position, or capacity in which such Targeted Employee will be likely to or inevitably have to use any of GE Appliances confidential, proprietary, or trade secret information or data in order to perform such role;

(C) Ordering Midea to return to GE Appliances all originals and copies of any confidential, proprietary, or trade secret information of GE Appliances in its possession, custody or control;

(D) Directing Midea to cause any electronic copies of GE Appliances confidential, proprietary, or trade secret information identified on Midea's computers, network, systems, online accounts, or any other electronic storage devices, media, or locations, including but not limited to cloud-based servers and accounts to be forensically removed;

(E) Granting GE Appliances provisionary relief in the form of expedited discovery, including:

(i) Requiring Midea to disclose to GE Appliances the following information for each Targeted Employee: (1) title, position, and department with Midea; (2) start date at Midea; (3) specific job description and duties with Midea including specific projects each Targeted Employee has been working on since joining Midea; (4) the supervisor's name and position and duties; and (5) company e-mail address with Midea

(ii) Pre-Hire communications with, and personnel files of, each Targeted Employee

(iii) Specific protections Midea has put into place to protect against disclosure or use of GE Appliances confidential or proprietary information

(iv) Forensic review of the Targeted Employees' emails to determine whether GE Appliances confidential information has been shared

(v) Depositions of the Targeted Employees and a representative of Midea to investigate the extent of overlap between their positions at GE Appliances and Midea

(F) Awarding GE Appliances compensatory and punitive damages against Midea in an amount to be determined at trial, including without limitation, incidental and consequential damages, lost profits, and amounts representing the diminution in value of GE Appliances' business resulting from Midea's actions; and

(G) Awarding GE Appliances its costs, attorneys' fees and such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

The Company demands a trial by jury of all issues which may be so tried.

Dated: April 24, 2025

*/s Galit Kierkut*

Galit Kierkut, Esq.
*Attorneys for Plaintiff*

**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
(973) 360-7900
(973) 301-8410 (fax)

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

I certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: April 24, 2025

*/s Galit Kierkut*
Galit Kierkut, Esq.

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1**

I certify that the matter in controversy is not eligible for compulsory arbitration because plaintiff seeks damages beyond monetary damages, including a claim for temporary, preliminary, and permanent injunctive relief.

Dated: April 24, 2025

*/s Galit Kierkut*
Galit Kierkut, Esq.

**STATEMENT PURSUANT TO LOCAL CIV. R. 7.1.1**

Pursuant to Local Civ. R. 7.1.1, Plaintiff GE Appliances states that there is no third-party providing funding for some or all of the attorneys' fees and expenses for Plaintiff on a non-recourse basis in exchange for (1) contingent financial interest based upon the results of the litigation or (2) a non-monetary result that this not in the nature of personal or bank loan, or insurance.

Dated: April 24, 2025

*/s Galit Kierkut*
Galit Kierkut, Esq.

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Kevin Mazzella, in my capacity as Vice President, Technology, on behalf of Plaintiff GE Appliances, declare under penalty of perjury under the laws of the United States of America that factual allegations in the foregoing Verified Complaint are true and correct to the best of my knowledge or information and belief, and made subject to the penalties of perjury under 18 U.S.C. §1621 (relating to unsworn falsifications to authorities).

Executed on April 24, 2025.

Kevin Mazzella

Kevin Mazzella

# Exhibit A

**Employee Innovation and Proprietary Information Agreement**

TO: HAIER US APPLIANCE SOLUTIONS, INC. (hereinafter referred to as the "Company". "Company" may also refer to other legal entities as hereinafter specified.)

In consideration of my employment by Company (and my employment by Haier US Appliance Solutions, Inc. and controlled (directly or indirectly) subsidiaries or affiliates of Haier US Appliance Solutions, Inc.in the United States), and the compensation paid to me by the Company, I ("employee") agree:

(a) to disclose and assign, and do hereby assign, to the Company (or as the Company may direct) as its exclusive property, all inventions, discoveries, innovations, improvements, trade secrets and technical or business information which I may solely or jointly develop, conceive, reduce to practice or author during the period of my employment (1) that relate to the business or the present or demonstrated or reasonably foreseeable future research or development of the Company or its parent, subsidiaries or affiliates, or (2) that result from or are suggested by any work that I may do for the Company or its parent, subsidiaries or affiliates or (3) that are otherwise made through the use of Company, or its parent, subsidiaries or affiliates, time, equipment, supplies, facilities, material or secret* or confidential* information or data ("Company IP"). To the extent that any court of competent jurisdiction finds that any provision of this paragraph is unenforceable because it requires the assignment of any invention in contravention of the law or public policy of that jurisdiction, this paragraph shall be interpreted to impose only the maximum permissible assignment obligation. [**NOTICE:** This is the notice required by the states of CA, IL, KS, MN and WA, and any other state requiring such notice, notifying employees in such states that they are not obligated to assign to the Company any rights in an invention that the employee developed entirely on his or her own time without using the Company's equipment, supplies, facilities, material or trade secret information unless those inventions either (1) relate to the Company's business or actual or demonstrably anticipated research or development of the Company at the time the invention was made; or (2) result from any work performed by the employee for the Company.]

(b) that all original works of authorship that are made by me (solely or jointly with others) within the scope of my employment and that are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act (17 U.S.C. Sec.101) and I further agree, to the extent any such sole or joint work within the scope of my employment is determined not to be a "work made for hire," that I will disclose and assign to the Company (or as the Company may direct) as its exclusive property any such original work of authorship and any copyright therein;

(c) that if in the course of my employment with the Company, I incorporate into a Company product, process or machine any inventions, original works of authorship, developments, improvements and/or trade secrets that are owned or conceived by me or in which I have an interest ("Employee IP") and that is not already Company IP, the Company is hereby granted and shall have a nonexclusive, transferrable, sublicensable, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Employee Inventions as part of or in connection with such Company product, process or machine;

(d) to execute, upon the request of the Company, all necessary papers and otherwise provide proper assistance (at the Company's expense), during and subsequent to my employment, to enable the Company to obtain for itself or its nominees (and to vest legal title in the Company or its nominees in), patents, copyrights, or other legal protection for such inventions, discoveries, innovations, improvements, original works of authorship, trade secrets and technical or business information in any and all countries;

(e) to make and maintain for the Company adequate and current written records of all such inventions, discoveries, innovations, improvements, original works of authorship, trade secrets and technical or business information;

(f) at the Company's request, or upon any termination (or other ending) of my employment to deliver to the Company promptly all items that belong to the Company or its parent, subsidiaries or affiliates or that by their nature are for the

use of Company employees only, including, without limitation, all written and other materials that are of a secret*, restricted*, confidential*, or proprietary* nature relating to the business of the Company or its affiliates;

(g) not to use, publish or otherwise disclose (except as my Company duties may require), either during or subsequent to my employment, any secret*, restricted*, confidential* or proprietary information or data of the Company or its parent, subsidiaries or affiliates or any information or data of others that the Company or its parent, subsidiaries or affiliates are obligated to maintain in confidence, **except** that, in accordance with the federal Defend Trade Secret Act of 2016, I may have immunity from liability for the confidential disclosure of a trade secret to a Federal, State, or local government official solely for the purpose of reporting or investigating a suspected violation of law or for any such disclosure made in a sealed court filing or to my counsel in an anti-retaliation lawsuit. (For more information, see the GE Appliances Code of Conduct.);

(h) that except as required in performing my duties for the Company, I will not remove from Company's facilities any Company confidential, restricted, secret or proprietary information including, but not limited to, equipment, drawings, notes, reports, manuals, invention records, software, customer information, logs or other data or other material, whether produced by me or obtained from Company, including, but not limited to, the copying, storing or transmitting of such information via Personal Digital Assistants, mobile phones, tablets, external hard drives, USB "flash" drives, USB or similar storage devices, network storage devices or Internet sites, FireWire storage devices, floppy discs, CD's, DVD's, personal email accounts (including web-based email accounts such as Hotmail, Gmail, Yahoo), memory cards, Zip discs, and other media or devices which can be used to transmit or store electronic data (“Devices”);

(i) that if any Company secret, restricted, confidential or proprietary information has been stored on any personal Device, I will make Company aware of the Device and I will make the Device available to the Company for removal and copying of the Company information from the Device;

(j) not to disclose or use in my work with the Company any secret, restricted, confidential or proprietary information of others (including any prior employers), or any inventions or innovations of my own that are not included within the scope of this agreement;

(k) that a breach of any obligation or other provision of this agreement may cause irreparable injury to the Company which cannot be fully compensated by money. I therefore agree that in the event of any breach or threatened breach of this agreement by me, the Company shall be entitled to injunctive or other equitable relief as may be permitted by law;

(l) that the Company where permitted by law, may, at any time and without further consent, access and monitor: 1) any documents, data or information relating to my employment, and 2) my usage of Company information, materials, equipment, software, Devices, or other resources;

(m) that my employment with the Company is “at will” and that both the Company and I have the right to terminate my employment at any time, with or without advance notice and with or without cause;

(n) that, if at any time, I am an employee of Haier US Appliance Solutions, Inc. or a controlled (either directly or indirectly) subsidiary or affiliate of Haier US Appliance Solutions, Inc. in the United States, then with respect to, and for purposes of, such employment with any of these entities: 1) my obligations under this Agreement shall apply to all such employment and 2) “Company” as used in this Agreement shall refer to, Haier US Appliance Solutions, Inc. or such controlled subsidiary or affiliate, as the case may be; and

(o) I understand and agree that Company may, in the ordinary course of business, reproduce this original agreement by any means including, but not limited to, electronic copying, electronic transmission, electronic faxing or electronic scanning, storing and printing and I hereby accept, acknowledge and recognize such reproductions as authentic in lieu of this original agreement and hereby accept (and will not object to) any use whatsoever by Company of such reproductions including, without limitation, admission and use in any proceeding in any country including those in or

before any agency, patent office, court or tribunal. I further agree that such reproductions shall have the same force and effect as this original agreement.

This agreement supersedes and replaces, as of the date below appearing under my name, any prior existing agreement between the Company and me relating to the same subject matter; however, regardless of the foregoing, this agreement shall not supersede or replace any term of any agreement relating to non-compete obligations and/or post-employment restrictive covenants that I may have regarding the Company and any related enforcement actions including recovery of attorneys' fees. This agreement may not be modified or terminated, in whole or part, except in writing signed by an authorized representative of the Company. Discharge of my undertakings in this agreement shall be an obligation of my executors, administrators, or other legal representatives or assigns. In the event that any court of competent jurisdiction concludes that any provision (or portion of any provision) of this agreement is unenforceable because it conflicts with the law or public policy of that jurisdiction, the parties agree that the court should first narrow or otherwise interpret the provision to the extent necessary to conform it to the law or public policy of that jurisdiction. In the event that the court concludes that it is unable to narrow or otherwise interpret the provision so that it is not invalid, illegal or otherwise unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

That agreement shall be governed by the laws of the State of Delaware, without regard to the conflict of law provisions therein.

I represent that I have no agreements with or obligations to others in conflict with the foregoing. I further expressly affirm that by clicking the "Accept" button on the acknowledgment to this Employee Innovation and Proprietary Information Agreement, I am assenting to the terms of this Agreement and my assent creates or modifies the contractual relationship between me and the Company.

**These terms are used in the ordinary sense and do not refer to the official security classifications of the United States Government. The Company generally considers "secret", "restricted", "confidential" or "proprietary" any information or data that is not generally known -* *regardless of whether such information or data is in oral, written, machine readable or other form. When in doubt, you should assume that information or data is secret, restricted, confidential or proprietary unless or until determined otherwise. Without limitation, examples of information or data that may be of a secret, restricted, confidential or proprietary nature are: drawings, manuals, notebooks, reports, models, inventions, formulas, processes, machines, compositions, computer programs, accounting methods, business plans, information systems, customer and employee lists and any information and data in electronic form. For further information, you should consult your Company's assigned legal counsel.*

**(Rev: 05/2016)**

# Exhibit B

**GE Appliances**

**IT/Legal Document**

# GE Appliances Data & Document Classification Guidelines

*Data & Document Classification and Security*

## Document Control Information

| | |
|---|---|
| Version | 4.0 |
| Effective | Aug 23, 2024 |
| Document Owner | GE Appliances DT/Legal |
| Document Approver | GE Appliances DT/Legal |
| Document Classification | GE Appliances Internal |

# I Introduction

Data and Document classification procedures are a critical component to an effective enterprise governance, risk, and compliance documentation management program. Properly categorizing company information is the first step towards protecting our intellectual property, know-how, personal data, and other proprietary or confidential information. This guidance applies to all GE Appliances employees, officers, directors, and subsidiaries (collectively, the "Company"). These Guidelines are intended to assist the Company with (a) classifying information generated or used by the Company and (b) depending on its classification, using appropriate methods to label, store, transmit, and dispose of such information. This guidance applies to data and "documents" as defined in the GE Appliances Document and Records Management Policy, which covers stored digital documents and data in all formats and media, as well as hard-copy documents. Electronic data in transit, such as email or third-party electronic transactions, is also included.

Company information should be classified into one of four categories:

1. Public,
2. GE Appliances Internal,
3. GE Appliances Confidential, or
4. GE Appliances Restricted.

These Guidelines define and provide examples of the types of information to be designated in each of the categories and specify access restrictions to help guide classification decisions. The critical factor in classifying information is the extent to which unauthorized disclosure of the information might harm the Company and, in the case of personal data, the individual (see "Impact of Unauthorized Disclosure"). All data systems and documents must have an owner or owners who are accountable for appropriately classifying and handling the information. These Guidelines also set forth security requirements relating to the labeling, storage, transmission, and disposal of the information that apply depending on the classification of the information.

These Guidelines supplement the GE Appliances Document and Records Management Policy, which describes the Company's formal document management program and specific retention periods and document deletion procedures. As applicable, owners of documents or records should use the labeling conventions and implement the protective measures described below. Additional explanatory labeling (e.g., "Attorney-Client Communication", "Privileged and Confidential") or specific access restrictions (e.g., "For Limited, Need-to-Know Use Only") are also encouraged when appropriate and in consultation with GE Appliances Legal.

The Company, with support from the Information Security and Legal functions, is responsible for implementing these Guidelines and providing periodic training. Tools, templates, and implementation best practices will be developed by the DT Risk Council and posted with links from the GE Appliances IT Policies Portal at:
https://geappliances.sharepoint.com/sites/itrisk/SitePages/IT%20POLICIES%20PORTAL.aspx

## II Guidelines

| Label | *Public* | *GE Appliances Internal* | *GE Appliances Confidential* | *GE Appliances Restricted* |
|---|---|---|---|---|
| Description | Non-sensitive information available for public disclosure. | Information belonging to the Company and not for disclosure to the public or external parties, except for GE Appliances business purposes. Generally available to employees and authorized non-employees. | Information that is proprietary or confidential within the Company and intended for business use only by those with a need-to-know. May be disclosed outside the Company only under NDA or other confidentiality terms. | Information that is highly sensitive or private, of highest value to the Company, or intended for use only by specified individuals. |
| Examples | - Press releases and company advertising (once approved for issuance)<br>- Information on public portions of Company websites | - Personal data[1] such as employee badge photos, SSOs, business contact information for employees, contractors, customers, suppliers, and other business partners of GE Appliances<br>- Diagnostic appliance data without individual identifiers<br>- De-identified (pseudonymized) personal data<br>- Company organization charts and telephone directories<br>- Order, Billing, Invoicing details without individual identifiers<br>- Product Availability | - Personal data[1] of consumers, employees, contractors, job applicants, customers, site visitors, and suppliers (excluding personal data classified as GE Appliances Internal)<br>- Diagnostic appliance data with individual identifiers<br>- Communications protected by attorney-client privilege<br>- Sales, margin, or aggregated tax information that the Company has not made publicly available (such as by posting to an external Company website)<br>- Product Costing, Product Pricing specific to a customer<br>- Agreements with Vendors, Suppliers, Customers<br>- EHS Compliance data<br>- New Product Design, Specifications, Prototypes, Blueprints<br>- Pre-submission/application patent and trademark information | - Sensitive personal data[1] (certain employment, medical, and financial data)<br>- Merger/acquisition-related information<br>- Major trade secrets; strategic plans<br>- Financial results prior to release<br>- Trade-controlled information<br>- Passwords, digital certificate private keys, PINs, IT Security Logs, Data Loss Prevention information |

| Label | Public | GE Appliances Internal | GE Appliances Confidential | GE Appliances Restricted |
|---|---|---|---|---|
| Impact of Unauthorized Disclosure | No harm. | Limited harm. | Significant harm (e.g., legal or financial liability, adverse competitive impact, harm to Company reputation). | Severe harm (e.g., severe legal or financial liability, extreme harm to competitive position; significant harm to Company reputation). |
| Access Restrictions | None. | Access normally restricted to employees and approved non-employees for business purposes only. | Access granted to employees only with a need-to-know.<br>Access granted to external parties subject to a non-disclosure agreement and a business need-to-know. | Access granted only to specified, authorized individuals and (if required) verified Nationality.<br>Access granted to external parties subject to a non-disclosure agreement, a business need-to-know, and (if required) appropriate licenses. |
| Physical Labeling (Paper, Diskette or Tape Label) | None required. | Appropriate markings (“GE Appliances Internal” or equivalent) recommended, but not required. Specific, additional access restrictions (e.g., “For Internal GE Appliances Use Only”) also recommended. | Appropriate markings (“GE Appliances Confidential” or equivalent) strongly recommended. Specific, additional access restrictions (e.g., “For Limited, Need-to-Know Use Only”) also recommended. | Appropriate markings (“GE Appliances Restricted” or equivalent) required. Specific, additional access restrictions (e.g., “For Use by Named Individuals Only”) also recommended. |
| Electronic Labeling (Digital File, E-mail, or Web Page) | None required. | Appropriate markings (as above) on subject-line or header/footer recommended, but not required. | Appropriate markings (as above) on subject-line or header/footer strongly recommended. | Appropriate markings (as above) on subject-line or header/footer required. |

| Label | *Public* | *GE Appliances Internal* | *GE Appliances Confidential* | *GE Appliances Restricted* |
|---|---|---|---|---|
| Physical Storage (Paper, Diskette, or Tape) | No security requirements. | Secure office or other location. Room need not be locked if access to the building or floor is restricted to GE employees and authorized non-employees. | Secure office or other location. Storage in a locked drawer, file cabinet, or office required. | Storage in a locked drawer, file cabinet, or office required. If stored in an open-file storage area, access to the area must be restricted to authorized personnel. |
| Electronic Storage (Digital File, E-mail, or Web Page) | No security requirements. | Stored in a directory or folder with restricted access, e.g., password protection. | Required:<br>- Information must be stored in a directory or folder with controlled access (e.g., password protected).<br>- Information must be stored in encrypted form (using business-approved methods[2]). | Required:<br>- Information must be stored in a directory or folder with controlled access.<br>- Information must be stored in encrypted form (using business-approved methods[2]). |
| Physical Transmission (Paper, Diskette, or Tape) | No security requirements. | Internal GE – No security requirements.<br>External – Sealed envelope. | Appropriately marked and sealed. | Appropriately marked and sealed and to include tracking number with required signature confirming the receipt. |
| Electronic Transmission (Digital File, E-mail, or Web Page) | No security requirements. | Information should be transmitted to a verified account (email address or login ID). | Required:<br>- Transmission must have controlled access (e.g., password protected account login).<br>- Information must be transmitted in encrypted form (using business-approved methods[3]).<br>Acceptable encryption mechanisms include either sending an unencrypted item via an encrypted channel or sending an encrypted item via an unencrypted channel. | Required:<br>Information must be transmitted in encrypted form (using business-approved methods[3]) and addressee must be separately authenticated before access granted.<br>Acceptable encryption mechanisms include either sending an unencrypted item via an encrypted channel or sending an encrypted item via an unencrypted channel. |

| **Label** | ***Public*** | ***GE Appliances Internal*** | ***GE Appliances Confidential*** | ***GE Appliances Restricted*** |
|---|---|---|---|---|
| Electronic Disposal[4] (Digital File) | No security requirements. | Removal of directory entry for file. | Removal of directory entry for file. | Removable media including USB drives, CD/DVD, etc. should be physically destroyed. |
| Physical Disposal[4] (Paper, Diskette, Tape, or Hard Disks/Drives) | No security requirements. | After applicable Electronic Disposal, secure onsite or off-site physical disposal using business-approved methods[5] for this data class. | After applicable Electronic Disposal, secure onsite or off-site physical disposal using business-approved methods[5] for this data class. | After applicable Electronic Disposal, secure onsite disposal using business-approved methods[5]. Disposal audit trail is required. |

---

1. Data elements defined as Personal Data and Sensitive Personal Data are described at https://sl.geappl.io/*personal-data *(requires VPN)*.
2. For details, refer to the section 'Encrypt Sensitive Data at Rest' of the "GE Appliances Data Protection Standard" found at the GE Appliances IT Policies Portal at: https://geappliances.sharepoint.com/sites/itrisk/SitePages/IT%20POLICIES%20PORTAL.aspx
3. For details, refer to the section 'Encrypt Sensitive Data in Transit' of the "GE Appliances Data Protection Standard" found at the GE Appliances IT Policies Portal at: https://geappliances.sharepoint.com/sites/itrisk/SitePages/IT%20POLICIES%20PORTAL.aspx
4. These guidelines cover only the appropriate document disposal process; please consult the GE Appliances Document Management Guidelines and your business's Document Management Leader or GE Appliances Legal for guidance on any legal document retention request and how long documents should be retained before disposal.
5. For details, refer to the section 'Securely Dispose of Data' of the "GE Appliances Data Protection Standard" found at the GE Appliances IT Policies Portal at: https://geappliances.sharepoint.com/sites/itrisk/SitePages/IT%20POLICIES%20PORTAL.aspx

# Exhibit C

## Contact

www.linkedin.com/in/brian-allgeier-890425a5 (LinkedIn)


## Top Skills

Plastic Part Design
Computer-Aided Design (CAD)
Prototyping

# Brian Allgeier

Senior Design Engineer, GE Appliances
Louisville, Kentucky, United States

## Summary


Widely-skilled mechanical engineer with seven years of professional experience in the appliance industry. Excels in innovation and creative design while equally experienced in hands-on prototyping and experimentation. Takes pride in quality of work with deliberate focus on accuracy, craftsmanship, and attention to detail. Diverse STEM background in electromechanical engineering, technical physics research, data analysis, and computer science. Has excelled both in collaborative teams and individually to produce quality results, practical designs, and functional product prototypes. Highly motivated, passionate, and goal-driven with excellent communication, organization, efficiency, and time-management while carrying a very broad range of applicable technical skills from a uniquely diverse education. Goal is to apply experience to a wider scope of research and development challenges in a smaller, more intimate team environment within a growing field.


## Experience

### GE Appliances, a Haier company

Senior Design Engineer, Refrigeration Features and Appearance
January 2018 - Present (7 years 4 months)
Louisville, Kentucky

Senior Design Engineer, Refrigeration (2022-present)
Lead multiple material-cost-out projects with cross-functional team involving sourcing, quality, reliability, and manufacturing to reduce yearly manufacturing cost by several million dollars.
Invented, prototyped, and patented multiple concepts for enhanced user experience and unique features while optimizing assembly methods for increased efficiency and product reliability.

Design Engineer, New Product Development (2020-2021)
Collaborated with small engineering team to develop a new, highly-complex appliance product to an emerging market from the ground up. Consistently

challenged with unforeseen technical obstacles demanding joint effort and creative solutions requiring quick prototyping and iteration.
Subsystem leader responsible for the novel design of a complex rotating subassembly which serves as the main user-to-product interactive feature. Final design met all functional requirements while navigating technical challenges, strict appearance constraints, and product safety checks. Invented, prototyped, and patented several ideas critical to functionality and user experience.

Edison Engineering Development Program (2018-2019)
Widely-recognized, multi-year program involving graduate level coursework, local engineering instruction, and technical projects while rotating through several full-time engineering roles.
Advanced the progression of laundry appliance production cost-out projects worth ~$1.5 million through technical analysis, lab testing, supplier communication, and peer evaluation.
Invented, patented, prototyped refrigeration shelving concepts focused on user convenience.

### Department of Mechanical Engineering
### Assistant MEMS Engineer
June 2016 - May 2017 (1 year)
University of Louisville

Developed a novel design for a vibrational energy harvesting micro-electromechanical system (MEMS) for powering wireless sensors, transceivers, etc. Developed a microfabrication procedure to create a device prototype for my M.S. thesis, Piezoelectric Bistable Buckled Beam Energy Harvester.

### Department of Physics and Astronomy
### Nuclear Physics Data Analyst
January 2015 - May 2016 (1 year 5 months)
University of Kentucky

Analyzed data of the UCNA beta-decay experiment using ultra-cold neutrons, located at Los Alamos National Laboratory. Researched the time and space dependencies and fluctuations of the experiment's main magnetic field. Generated extremely large nuclear physics simulations on UK's local supercomputing cluster. Results observed by entire UCNA collaboration.

### Residence Life

Resident Adviser
August 2014 - May 2016 (1 year 10 months)
University of Kentucky

Supervised thirty residents of on-campus housing by acting as a university liaison for students in need, aiding in transition, mediating roommate conflicts, and hosting campus programming. Developed and refined leadership, responsibility, time management, work ethic, and social skills.

### Society of Physics Students
President
January 2015 - January 2016 (1 year 1 month)
University of Kentucky

Organized meetings, events, communications, and managed a leadership team to establish interest in current and prospective physics undergraduates. Planned and hosted lunchtime physics lectures. Coordinated department-wide field trips to Fermilab and Oak Ridge National Labs.

### Academic Enhancement
Peer Tutor, Multivariable Calculus
October 2013 - May 2015 (1 year 8 months)
University of Kentucky

Peer tutor for students enrolled in Calculus III. Demonstrated academic knowledge, leadership skills, great communication with peers, organization, and valuable teaching and social skills. Displayed teaching adaptability and unique thinking when tutoring a special-needs blind student.

### Fermilab
Particle Physics Data Analysis
June 2014 - August 2014 (3 months)
Batavia, Illinois

Intern within the Particle Physics Division at Fermi National Accelerator Laboratory. Helped in analysis of potential Higgs boson data gathered by the D-Zero detector located at the Tevatron.
Officially recognized as research assistant on multiple D-Zero notes, lectures, and publications. Gave formal talks about research experience to Fermilab and to the University of Kentucky.

### Al Allgeier & Sons
Construction Worker
May 2012 - August 2013 (1 year 4 months)
Louisville, Kentucky Area

Experienced on-site team work, carpentry skills, and construction techniques while working with the family business remodeling homes, replacing roofs, and framing new homes and additions.

## Education

### University of Louisville

Master of Science - MS, Mechanical Engineering · (2016 - 2017)

### University of Kentucky

Bachelor’s Degree, Physics (Computer Science Minor) · (2012 - 2016)

### University of Kentucky

Bachelor’s Degree, Mathematics · (2012 - 2016)

### Saint Xavier High School

· (2008 - 2012)

# Exhibit D

(Rev: Oct2016)

# REMINDER OF CONTINUING CONFIDENTIALITY AND INTELLECTUAL PROPERTY OBLIGATIONS

Dear Colleague:

When or after you were hired by Haier US Appliance Solutions, Inc., or one of its affiliates, (hereinafter, "Company"), you signed an Employee Innovation and Proprietary Information Agreement ("EIPIA"), or equivalent Confidentiality/Non-Disclosure Agreement, (hereinafter collectively, "Agreement")

By signing this Agreement you agreed, and it is expected, that you would not, to the extent permitted by law, both during and after the termination of your employment, use or disclose to others, including any future employer(s), any of the Company's secret or confidential information, including intellectual property, to which you had access while employed by the Company.

If you have any questions regarding what information and/or intellectual property are considered to be secret and confidential and/or the scope of your continuing obligations, please contact your business Labor and Employment Counsel and/or Intellectual Property Counsel and/or your business HRM.

A copy of your signed agreement is available through the HRM for your business.

Please confirm below that you have read and understood this reminder.

☒ **I signed an EIPIA, or equivalent Confidentiality/Non-Disclosure Agreement, and will abide by the terms.**

☐ **I do not recall signing an EIPIA or equivalent Confidentiality / Non-Disclosure Agreement**

☐ **Other:** ______________________________

______________________________

| [signature] | Brian Allgeier | 3/14/25 | 3/14/25 |
|---|---|---|---|
| **(Employee's Signature)** | **(Print Employee's Name)** | **(Date)** | **(Last day of employment)** |
| [signature] | Catherine Darmstadt | 03.19.25 | 03.14.2025 |
| **(Human Resources Manager)** | **(HRM Name)** | **(Date)** | **(Last day of employment)** |

# Exhibit E

Contact

www.linkedin.com/in/cody-ewing-369bb5148 (LinkedIn)

## Top Skills

Creo Parametric
Minitab
Testing and Evaluation

# Cody Ewing

Senior Design Engineer at GE Appliances
Louisville Metropolitan Area

## Summary

Solid modeling software including PTC Creo and Solidworks

Injection molded and sheet metal component design

Functional prototypes using rapid prototyping and metal forming.

New product development for multiple concurrent projects.

Commercial air conditioning design and testing

Washing machine design and performance

## Experience

### Midea America Research Center
Regulatory/R&D Engineer- Laundry
January 2025 - Present (4 months)
Louisville, Kentucky, United States

### GE Appliances, a Haier company
6 years 1 month

Senior Design Engineer
September 2021 - January 2025 (3 years 5 months)
Louisville, Kentucky, United States

Platform engineer - top load washing machines. Specialized in suspension design and subwasher dynamics.

Design Engineer
January 2019 - September 2021 (2 years 9 months)
Louisville, Kentucky, United States

Structural engineer - commercial air conditioning. Designed sheet metal and injection molded components. Helped to perform agency testing.

### Brinly-Hardy Company

Design Engineer
January 2015 - December 2018 (4 years)
Louisville Metropolitan Area

Design Engineer for consumer lawn and garden equipment

Cozy Heating Systems LLC
Design Engineer
January 2015 - December 2018 (4 years)
Louisville, Kentucky Area

Design Engineer for residential heating equipment

## Education

University of Louisville
· (2013 - 2018)

# CODY
# EWING

Floyds Knobs, IN
502-526-7141
ewingcody53@gmail.com
Cody Ewing


## EDUCATION

**M. Eng. in Mechanical Engineering | J.B. Speed School of Engineering**
MAY 2018
- 4.0 GPA

**B.S. in Mechanical Engineering | J.B. Speed School of Engineering**
MAY 2017
- 3.99 GPA, Highest academic grade of graduating ME class

## EXPERIENCE

**Design Engineer and Senior Design Engineer | GE Appliances (Clothes Care)**
SEPTEMBER 2021 – PRESENT
- Led multiple projects through change process such as new component tools or capacity tools
- Pioneered new algorithm on certain washer models to significantly reduce wet load rates
- Created and submitted IP for top-load washers such as a new suspension design and new algorithms
- Supported NPI programs, as well as scoped future programs
- Edited parametric software to create custom cycle maps for test units
- Co-lead Mechanical Engineering Foundations training program for Mechanical co-ops
- Performed analysis of several competitor units to fully understand spin ramp profiles, out of balance handling, agitate stroke characteristics, and water levels
- Assisted with NPI builds to monitor quality concerns
- Diagnose test unit and field return failures through fault codes and physical inspection
- Assisted with "run the plant" activities including several new tool qualifications

**Design Engineer | GE Appliances (Zoneline Commercial AC)**
JANUARY 2019 – SEPTEMBER 2021
- Implemented designs of 30+ parts on the entirely new design for the “Vertical” AC unit. This includes 18 sheet metal parts, 2 injection molded parts, and 8 die cut foam/insulation components
- Applied GD&T to appropriate parts through the use of Creo's MBD functionality
- Worked with 3DCS team to set up and examine 3D tolerance analyses on the Zoneline Vertical unit
- Worked with technicians to set up and perform UL 60335 agency testing of the Zoneline Vertical unit
- Worked with factory to evaluate part changes due to ergonomic issues and line efficiency

**Manufacturing Co-op and Design Engineer | Brinly Hardy Company, Cozy Heating Systems**
JANUARY 2015 – DECEMBER 2018
- Completed time studies to analyze assembly operations
- Produced standard work for operator instructions on forming parts and assembly processes
- Reverse engineered parts to create solid models from outdated drawings
- Used design of experiments (DOE) to determine important factors for design
- Designed, prototyped, and tested chest-mounted broadcast spreader
- Designed, solid modeled, and fabricated welding fixtures for new assemblies

## SKILLS

- Linear Regression Modeling and analysis (Minitab)
- Creo and SolidWorks Modeling (sheetmetal and solids)
- Data analysis with Microsoft Excel
- 3D printing and prototyping
- Mechanically inclined – appliance assembly and disassembly

## ACCOMPLISHMENTS

- 3 granted patents, 7 additional filed patent applications

# Exhibit F

(Rev: Oct2016)

# REMINDER OF CONTINUING CONFIDENTIALITY AND INTELLECTUAL PROPERTY OBLIGATIONS

Dear Colleague:

When or after you were hired by Haier US Appliance Solutions, Inc., or one of its affiliates, (hereinafter, "Company"), you signed an Employee Innovation and Proprietary Information Agreement ("EIPIA"), or equivalent Confidentiality/Non-Disclosure Agreement, (hereinafter collectively, "Agreement")

By signing this Agreement you agreed, and it is expected, that you would not, to the extent permitted by law, both during and after the termination of your employment, use or disclose to others, including any future employer(s), any of the Company's secret or confidential information, including intellectual property, to which you had access while employed by the Company.

If you have any questions regarding what information and/or intellectual property are considered to be secret and confidential and/or the scope of your continuing obligations, please contact your business Labor and Employment Counsel and/or Intellectual Property Counsel and/or your business HRM.

A copy of your signed agreement is available through the HRM for your business.

Please confirm below that you have read and understood this reminder.

☑ **I signed an EIPIA, or equivalent Confidentiality/Non-Disclosure Agreement, and will abide by the terms.**

☐ **I do not recall signing an EIPIA or equivalent Confidentiality / Non-Disclosure Agreement**

☐ **Other:** ______________________________

______________________________

| Cody Ewing | Cody Ewing | 1-14-2025 | 1-9-2025 |
|---|---|---|---|
| **(Employee's Signature)** | **(Print Employee's Name)** | **(Date)** | **(Last day of employment)** |
| Cat Darmstadt | Catherine Darmstadt | 01.27.25 | |
| **(Human Resources Manager)** | **(HRM Name)** | **(Date)** | **(Last day of employment)** |

# Exhibit G

## Contact

www.linkedin.com/in/adam-hofmann-7739108 (LinkedIn)


## Top Skills

Tableau
SQL
Google Cloud Platform (GCP)

## Patents

Diverter with capability of one or multiple ports active
Additive manufacturing for dishwasher controls
Wash manifold diverter for expanding coverage with different jet patterns
Mechanical multi passage air flow distribution system for the dishwasher dry system
Dehumidification method for a dishwasher

# Adam Hofmann

Senior Staff R&D Engineer - Innovation CRC
Louisville Metropolitan Area

## Summary


Principal Engineer - Dishwasher Algorithms and Wash Performance

DFSS Black Belt Certified

Connected Data Practitioner Certified


---

## Experience

### Midea America Research Center
Senior Staff R&D Engineer - CRC Innovation
December 2024 - Present (5 months)
Louisville, Kentucky, United States

### GE Appliances, a Haier company
9 years 2 months

Dishwasher Digital and Advanced Development Engineering Manager
August 2024 - December 2024 (5 months)
United States

•Lead a team of engineers to utilize core Dishwasher technology including filtration, hydraulics, heat transfer, chemical interaction, and connected data analysis to advance the product to next generation
•Lead the patent review board
•Deliver Intellectual Property to the business that will help set the framework for future product development
•Dishwasher cycle design to meet energy regulations
•Connected dishwasher algorithm development to maximize product intelligence, automated diagnostics, and consumer value
*Utilize Tableau and Google Cloud Platform to provide connected dishwasher data analysis for the Technology team

Dishwasher Advanced Development Engineering Manager
November 2015 - August 2024 (8 years 10 months)
Louisville, Kentucky Area

•Lead a team of engineers to utilize core Dishwasher technology including filtration, hydraulics, heat transfer, chemical interaction, and connected data analysis to advance the product to next generation
•Lead the patent review board
•Act as technical lead for third party review agencies such as Consumer Reports, Reviewed.com, and Wirecutter
•Deliver Intellectual Property to the business that will help set the framework for future product development
•Dishwasher cycle design to meet energy regulations
•Connected dishwasher algorithm development to maximize product intelligence, automated diagnostics, and consumer value

## General Electric

12 years 9 months

### Advanced Development Engineer

August 2011 - November 2015 (4 years 4 months)
Louisville, Kentucky Area

•Utilize core Dishwasher technology including filtration, hydraulics, heat transfer, chemical interaction to advance the product to next generation
•Deliver Intellectual Property to the business that will help set the framework for future product development

### New Product Design Team Leader

January 2006 - August 2011 (5 years 8 months)
Louisville, Kentucky Area

•Lead team of engineers on Profile dishwasher program for $10M benefit and first GE top control plastic tub Dishwasher for $8M benefit.
•Design lead for controls subsystem to achieve 2007 energy star compliance on 1.2 million dishwashers manufactured per year delivering $14M benefit.
•Utilized predictive design tools of Six Sigma, Reliability, and Transfer Functions to qualify design changes on wiring harnesses, timers, and other controls components.

### Engineering Team Leader

March 2003 - January 2006 (2 years 11 months)
Louisville, Kentucky Area

•Managed team of engineers to reduce the cost of manufacturing for GE refrigeration.
•Managed $5.9 Million in project funding provided to the team each year.
•Implemented projects in excess of $1 Million annual savings for each year in this role.

Samtec
Quality Engineer
January 2000 - March 2003 (3 years 3 months)

## Education

University of Louisville
MBA · (2005 - 2008)

University of Louisville
BS, Mechanical Engineering · (1998 - 2000)

Wittenberg University
BA, Physics · (1994 - 1998)

# Exhibit H

(Rev: Oct2016)

# REMINDER OF CONTINUING CONFIDENTIALITY AND INTELLECTUAL PROPERTY OBLIGATIONS

Dear Colleague:

When or after you were hired by Haier US Appliance Solutions, Inc., or one of its affiliates, (hereinafter, "Company"), you signed an Employee Innovation and Proprietary Information Agreement ("EIPIA"), or equivalent Confidentiality/Non-Disclosure Agreement, (hereinafter collectively, "Agreement")

By signing this Agreement you agreed, and it is expected, that you would not, to the extent permitted by law, both during and after the termination of your employment, use or disclose to others, including any future employer(s), any of the Company's secret or confidential information, including intellectual property, to which you had access while employed by the Company.

If you have any questions regarding what information and/or intellectual property are considered to be secret and confidential and/or the scope of your continuing obligations, please contact your business Labor and Employment Counsel and/or Intellectual Property Counsel and/or your business HRM.

A copy of your signed agreement is available through the HRM for your business.

Please confirm below that you have read and understood this reminder.

☒ **I signed an EIPIA, or equivalent Confidentiality/Non-Disclosure Agreement, and will abide by the terms.**

☐ **I do not recall signing an EIPIA or equivalent Confidentiality / Non-Disclosure Agreement**

☐ **Other:** ____________________

____________________

| [signature] | Adam Hofmann | 12/13/24 | 12/13/24 |
|---|---|---|---|
| **(Employee's Signature)** | **(Print Employee's Name)** | **(Date)** | **(Last day of employment)** |

| | | | |
|---|---|---|---|
| **(Human Resources Manager)** | **(HRM Name)** | **(Date)** | **(Last day of employment)** |

# Exhibit I

(Rev: Oct2016)

# REMINDER OF CONTINUING CONFIDENTIALITY AND INTELLECTUAL PROPERTY OBLIGATIONS

Dear Colleague:

When or after you were hired by Haier US Appliance Solutions, Inc., or one of its affiliates, (hereinafter, "Company"), you signed an Employee Innovation and Proprietary Information Agreement ("EIPIA"), or equivalent Confidentiality/Non-Disclosure Agreement, (hereinafter collectively, "Agreement")

By signing this Agreement you agreed, and it is expected, that you would not, to the extent permitted by law, both during and after the termination of your employment, use or disclose to others, including any future employer(s), any of the Company's secret or confidential information, including intellectual property, to which you had access while employed by the Company.

If you have any questions regarding what information and/or intellectual property are considered to be secret and confidential and/or the scope of your continuing obligations, please contact your business Labor and Employment Counsel and/or Intellectual Property Counsel and/or your business HRM.

A copy of your signed agreement is available through the HRM for your business.

Please confirm below that you have read and understood this reminder.

☑ **I signed an EIPIA, or equivalent Confidentiality/Non-Disclosure Agreement, and will abide by the terms.**

☐ **I do not recall signing an EIPIA or equivalent Confidentiality / Non-Disclosure Agreement**

☐ **Other:** ______________________________

______________________________

| [signature] | Kyle Kratzsch | 1/29/2025 | 1/29/2025 |
|---|---|---|---|
| **(Employee's Signature)** | **(Print Employee's Name)** | **(Date)** | **(Last day of employment)** |
| [signature] | Angie Higgs | 1/29/25 | 1/29/25 |
| **(Human Resources Manager)** | **(HRM Name)** | **(Date)** | **(Last day of employment)** |

# Exhibit J

Contact

www.linkedin.com/in/kyle-kratzsch-13b94a9a (LinkedIn)

## Top Skills

R&D
Plastics
Engineering

# Kyle Kratzsch

Product Safety Leader
Louisville, Kentucky, United States

## Experience

### Midea America Research Center
Sr. Principal Product Safety Engineer
January 2025 - Present (4 months)

### GE Appliances, a Haier company
8 years 8 months

Director - Product Safety and Reliability
April 2021 - January 2025 (3 years 10 months)

Product Safety Program Manager
June 2016 - April 2021 (4 years 11 months)

### General Electric
10 years

Engineering Program Manager
March 2014 - June 2016 (2 years 4 months)

Cost Out Engineering Manager
January 2012 - March 2014 (2 years 3 months)
Louisville KY

Cost Out Team Leader
June 2009 - January 2012 (2 years 8 months)
Louisville KY

Project Engineer
July 2006 - June 2009 (3 years)
Louisville KY

### Volvo Powertrain North America
Advanced Development Engineer
October 2004 - July 2006 (1 year 10 months)
Hagerstown, MD

Research in diesel engine combustion and aftertreatment devices

## Education

### University of Maryland College Park

Master of Science (M.S.), Mechanical Engineering · (2002 - 2004)

### University of Kentucky

Bachelor of Science (B.S.), Mechanical Engineering · (1998 - 2002)

# Exhibit K

(Rev: Oct2016)

# REMINDER OF CONTINUING CONFIDENTIALITY AND INTELLECTUAL PROPERTY OBLIGATIONS

Dear Colleague:

When or after you were hired by Haier US Appliance Solutions, Inc., or one of its affiliates, (hereinafter, "Company"), you signed an Employee Innovation and Proprietary Information Agreement ("EIPIA"), or equivalent Confidentiality/Non-Disclosure Agreement, (hereinafter collectively, "Agreement")

By signing this Agreement you agreed, and it is expected, that you would not, to the extent permitted by law, both during and after the termination of your employment, use or disclose to others, including any future employer(s), any of the Company's secret or confidential information, including intellectual property, to which you had access while employed by the Company.

If you have any questions regarding what information and/or intellectual property are considered to be secret and confidential and/or the scope of your continuing obligations, please contact your business Labor and Employment Counsel and/or Intellectual Property Counsel and/or your business HRM.

A copy of your signed agreement is available through the HRM for your business.

Please confirm below that you have read and understood this reminder.

☒ **I signed an EIPIA, or equivalent Confidentiality/Non-Disclosure Agreement, and will abide by the terms.**

☐ **I do not recall signing an EIPIA or equivalent Confidentiality / Non-Disclosure Agreement**

☐ **Other:** ______________________________

______________________________

| [signature] | Jason Zhuo | 1-14-25 | 1-14-25 |
|---|---|---|---|
| **(Employee's Signature)** | **(Print Employee's Name)** | **(Date)** | **(Last day of employment)** |
| [signature] | Catherine Darmstadt | 01.14.25 | 01.14.2025 |
| **(Human Resources Manager)** | **(HRM Name)** | **(Date)** | **(Last day of employment)** |

# Exhibit L

## Contact

www.linkedin.com/in/wentao-zhuo-22660544 (LinkedIn)

## Top Skills

Thermal Desktop
Project Management
Product Introduction

## Languages

Chinese (Simplified)
English

## Patents

Large capacity griddle over high btu burner

# Wentao Zhuo

Principal R&D Engineer at Midea
Louisville, Kentucky, United States

## Experience

### Midea America Corp

Principal R&D Engineer
January 2025 - Present (4 months)
Louisville, Kentucky, United States

### GE Appliances, a Haier company

11 years 7 months

Principal Design Engineer
September 2021 - January 2025 (3 years 5 months)
Louisville, KY, United States

Senior Design Engineer
December 2018 - September 2021 (2 years 10 months)
Louisville, Kentucky Area

Thermal Systems Design Engineer
July 2016 - December 2018 (2 years 6 months)
Louisville, KY, United States

Edison Engineering Development Program
July 2013 - June 2016 (3 years)
Louisville, KY, United States

Had rotations in refrigeration, range, washer, dryer, & advance system refrigeration.

### General Electric

Mechanical Engineering Co-op
January 2010 - August 2010 (8 months)
Louisville, Kentucky Area

Had rotations in range, dishwasher, & refrigeration.

## Education

### University of Louisville

Master of Engineering (M.Eng.), Mechanical Engineering · (2013 - 2015)

University of Kentucky

Bachelor of Engineering (B.E.), Mechanical Engineering · (2006 - 2011)

# Exhibit M

Contact

www.linkedin.com/in/james-armstrong-5b28a24 (LinkedIn)

## Top Skills

Mechanical Engineering

Six Sigma

Black Belt

## Honors-Awards

Certified Reliability Engineer

GE Edison Engineering Program Graduate

2023 AHAM Distinguished Service Award

## Patents

Adjustable shelf support assembly for an appliance

APPLIANCE WITH A VACUUM-BASED REVERSE AIRFLOW COOLING SYSTEM

Appliance with a vacuum-based reverse airflow cooling system using one fan

Refrigerator and ice maker apparatus

Fan apparency arrangement for an appliance

# James Armstrong

Director Advanced Systems -Cooking Products at GE Appliances, a Haier company

Louisville, Kentucky, United States

## Summary

Specialties: Mechanical Engineering, Design Engineering, Design for Six Sigma, Design for Reliability, Thermal Management, Quality Engineering

---

## Experience

### GE Appliances, a Haier company

10 years 6 months

**Director Advanced Systems -Cooking Products**

October 2019 - Present (5 years 7 months)

Louisville, Kentucky, United States

**Principal Advanced Systems Engineer**

November 2014 - October 2019 (5 years)

Louisville Ky

### GE Appliances

**Lead Advanced Systems Engineer**

October 2010 - November 2014 (4 years 2 months)

• Designed, fabricated and tested innovative new products and features for ovens, vent hoods and microwaves. Areas of focus include: oven racks, air filtration, electronics cooling systems, and energy storage. 22 US Patent Applications filed.

• Product line expert on airflow system design and testing. Mentored engineers with airflow related designs and test setups including structured research and thesis projects with the University of Louisville.

• Patent Evaluation Board member - Reviewed novelty searches and recommended the appropriate business actions, reviewed and edited patent applications, developed responses to office actions with legal team, reviewed patent clearance reports and monitored competitor patent activity in key areas.

• Solved complex design issues for key NPI programs in order to meet tight deadlines under pressure.

## GE Appliances

7 years 4 months

### Program Manager

January 2009 - April 2010 (1 year 4 months)

### Quality Black Belt

July 2008 - January 2009 (7 months)

• Responsible for reducing in-warranty service issues and improving the overall design robustness of all cooking products platforms by working with suppliers, manufacturing, and design to develop and implement corrective actions that led to a reduction of 2337 calls per year saving GE $300,000 annually.
• Led effort to analyze end of line test failures and correlate findings to field issues in order to determine underlying root cause and implement corrective actions.
• Developed a harness connector design guide to help eliminate business risks and help engineers determine the proper gauge and connector type for a given set of operating conditions.

### Design Engineer

January 2003 - July 2008 (5 years 7 months)

• Coordinated the complete design and development of the 2007 Wall Oven upgrade thermal system including stampings, drawn parts, fans, and heating elements from concept to production. 1 patent application submitted for this cooling system design (7,964,823)
• Led design reviews, FMEA (Failure Mode and Effect Analysis), FRACAS (Failure Reporting and Corrective Action System) meetings, and DFR (Design for Reliability) reviews.
• Responsible for first piece report deposition on all new and modified components, which included working with international and domestic suppliers to resolve design, manufacturing and material related issues.
• Oversaw the creation of mechanical drawings for drawing accuracy, mechanical integrity of design and adherence to applicable standards
• Supervised a team of 3 engineers through the design and qualification of an oven cavity/rack system, cooking algorithms and cooling/venting system that allowed for the industries first electronic control mounted in the door of a self-clean oven. 2 patent disclosures were submitted for the cooling system design: 8,141,549 and 8,006,687.
• Designed and validated two innovative fan detection devices required for meeting UL requirements. Utilized Design for Six Sigma tools (Design of Experiments, Tolerance loops, and Transfer functions) to optimize both

designs and to decide which concept should be implemented into production. 2 patent disclosures were submitted for the fans detection designs: 8,158,912 and application #12/198475.
• Managed evaluation testing for both UL and internal tests including prioritizing test schedule, lab resources, developing test plans, and led root cause analysis for all failures.

## Education

### Georgia Institute of Technology

MS, Mechanical Engineering · (2003 - 2007)

### University of Louisville

BS, Mechanical Engineering · (1997 - 2002)